THE STATE, *Appellant*, v. RUBEY.

1   **County and Township Funds**: ACTION BY THE STATE TO RECOVER. Under the laws now in force, county funds are the property of the county and not of the State, and the State has no right to sue for their recovery, except in actions brought to the use of the county on bonds of officers, which are by law required to be given to the State to the use of the county. Except in such cases, the suit should be in the name of the county. Where township organization is in force, the same rules apply to township funds.

2.  **State Funds**: ACTION FOR. The State cannot maintain an action for her own funds until default has been made in paying the same into the State treasury.

3.  **Public Funds Deposited in Bank.** The State cannot maintain an action against a bank in which the county treasurer has deposited public money, except by way of garnishment on execution against the treasurer, or perhaps, where there has been fraudulent collusion between the bank and the treasurer, and he and his sureties are insolvent, by a proceeding in equity to follow the funds in the hands of the bank.

4.  ———. The act of February 11th, 1881, (Sess. Acts 1881, p. 35,) does not authorize such an action.

5.  ———: "LOANING OUT." The prohibition found in section 1327, Revised Statutes, against public officers' "loaning out" the public moneys, does not forbid the depositing of such moneys in bank.

*Appeal from Adair Circuit Court.*—HON. ANDREW ELLISON, Judge.

AFFIRMED.

*Ben. Eli Guthrie* and *James Ellison* for appellant.

If the money deposited in the Savings Bank, is the money of the State, there can be no question that plaintiff

should recover in this action, and is entitled to payment in full before all other creditors of said bank.   Acts 1881, 35 ; R. S. 1879, § 184 ; 1 Kent 262 ; R. S. U. S., §§ 3466, 5101 ; *Bayne v. U. S.*, 93 U. S. 642 ; *Beaston v. Bank*, 12 Pet. 134; *U. S. v. Fisher*, 2 Cr. 358.

It is the conceded rule of the distribution of insolvent estates, that the sovereign is entitled to priority of payment.   1 Kent (10 Ed.) 269 ; *State v. Rodgers*, 2 H. & McH. 198 ; *Robinson v. Bank*, 18 Ga. 96 ; *Comm. v. Lewis*, 6 Binn. 266 ; *Jones v. Jones*, 1 Bland Ch. 443 ; *Murray v. Ridley*, 3 H. & McII. 171 ; *Hoke v. Henderson*, 3 Dev. 12 ; *Smith v. State*, 5 Gill 45 ; *Green's Estate*, 4 Md. Ch. 349 ; *Orem v. Wrightson*, 57 Md. 34 ; *State v. Bank*, 6 Gill & J. 205.   Missouri, both in her legislature and in her courts, has always recognized and enforced this principle.   R. S. 1845, p. 90, § 1 ; R. S. 1855, p. 151, § 1 ; R. S. 1865, p. 501, § 1 ; *State v. Rowse*, 49 Mo. 586 ; *Parks v. State*, 7 Mo. 194.   The rights of the government are always held paramount to those of the citizen.   *Hawthorn v. St. Louis*, 11 Mo. 59 ; *Fortune v. St. Louis*, 23 Mo. 239 ; 1 Dillon Munic. Corp., §§ 64, 65 ; R. S. 1879, §§ 2344, 2519.

Of the moneys deposited, the county revenues are certainly the State's property.   They are collected " to defray the expenses " of the county.   R. S., § 6798.   The county is simply a political division of the State, and all government therein is the State's government.   *Reardon v. St. Louis Co.*, 36 Mo. 561 ; *Ray Co. v. Bentley*, 49 Mo. 242 ; *Swineford v. Franklin Co.*, 73 Mo. 279 ; *Barton Co. v. Walser*, 47 Mo. 201 ; *Cedar Co. v. Johnson*, 50 Mo. 227.   This fund for " current county expenses," cannot be reached by the judgment of the creditor of the county, until all ordinary current expenses are provided for :   Because the government must be carried on, the public must be secure, though the individual may suffer.   *Grant v. Davenport*, 36 Iowa 401 ; *Coffin v. Davenport*, 26 Iowa 515 ; *Iowa R. R. Co. v. County of Sac*, 39 Iowa 134 ; *French v. Burlington*, 42 Iowa 618 ; *Von Hoffman v. Quincy*, 4 Wall. 549 ; *Comm. v. Lan-*

*caster Co.*, 6 Binn. 5; *Comm. v. Philadelphia Co.*, 1 Whart. 1; *s. c.*, 2 Whart. 289; High on Extr. Leg. Rem., § 352. Our legislature fully recognizes this doctrine. R. S., § 5370; *State v. Macon Co. Ct.*, 68 Mo. 46. It is the State's money. *State v. St. Louis Co. Ct.*, 34 Mo. 570; *Hamilton v. St. Louis Co. Ct.*, 15 Mo. 3; *St. Louis v. Shields*, 52 Mo. 351. *Conner v. Bent*, 1 Mo. 235; 1 Dillon Munic. Corp., (2 Ed.) §§ 34, 35, 39; *Meriwether v. Garrett*, 102 U. S. 472; *Supervisors v. Springfield*, 63 Ill. 66; *People v. Power*, 25 Ill. 187; *County of Richmond v. Lawrence*, 12 Ill. 1. The county revenue is assessed and collected by the same officers, extended on the same books, on the same property, has the same liens, rights, remedies and penalties for its collection as what, for sake of distinction, is termed the State revenue. R. S. 1879, §§ 6658, 6663, 6733, 6744, 6789, 6804, 6805, 6831, 6832, 6833. The county revenue, while handled and disbursed by what, for the sake of distinction, are called county officers, is applied and disbursed for State purposes only, and cannot, under the law, be converted to any other purposes. *State v. Macon Co. Ct.*, 68 Mo. 29, 48; *Meriwether v. Garrett, supra;* R. S., §§ 6818 to 6823, 6579, 6590, 4102, 4125, 4127.

So, also, the school funds belong primarily to the State. *Marion Co. v. Moffett*, 15 Mo. 604; *Holt Co. v. Harmon*, 59 Mo. 170; *Jasper Co. v. Shanks*, 61 Mo. 332; *Township v. Boyd*, 58 Mo. 276; *State v. New Madrid Co. Ct.*, 51 Mo. 82; *Washington Co. v. Boyd*, 64 Mo. 183, *Johnson Co. v. Gilkeson*, 70 Mo. 645; Const. Mo. 1875, art. 11, § 1; art. 9, § 1; R. S., chap. 150; R. S., § 7090.

It follows that whoever owes any of these funds is debtor to the State; that the distribution thereof into the hands of different custodians, is simply a matter of a manifestly proper public policy, for safety, convenience and economy of administration. Hence, the State is entitled to sue. *Keokuk v. Lane*, 31 Iowa 119; *Brocchus v. Morgan*, 5 Cent. L. J. 53; *Van Alen v. Am. Nat. Bank*, 52 N. Y. 1; *Bunting v. Hicks*, 2 Dev. & B. Eq. 130; *s. c.*, 32 Am. Dec.

699; *State v. Bank,* 45 Mo. 528. And the State having the right to recover, and the defendant being insolvent, she is entitled to priority of payment and first satisfaction in full, by the common law as above stated and by the statute. Acts 1881, p. 35.

Nor is there place found in our system of laws and policy of public administration for the doctrine that public revenues coming into the hands of receiving or disbursing officers become the property of such officers; they becoming the absolute debtors of the State simply, and the State losing all interest, right and claim in and to such revenue. R. S., §§ 1326, 1327; *State v. Clarkson,* 59 Mo. 149; *State v. Flint,* 62 Mo. 393; R. S., §§ 6802, 6820, 1331; *Cumberland v. Pennell,* 69 Me. 357; *s. c.,* 31 Am. Rep. 284; R. S., §§ 5378, 6741, 6795, 6796, 6780, 6782, 6822, 6823; *U. S. v. Thomas,* 15 Wall. 337.

A general deposit of money in a bank is a loan. The bank becomes the owner of the money and the debtor of the depositor, and he is simply a creditor of the bank. The bank is borrower; the depositor is loaner. Morse on Banks, (2 Ed.) p. 28; *Matter of Franklin Bank,* 19 Am. Dec. 413, and note 478. Trammel by an attempted general deposit of the funds in his hands, would have committed a felony. R. S. 1879, §§ 2326, 1327. The bank acquired no title as against the State, county or anybody else having title. Felony can confer no title. The bank knew the felony, and was *particeps criminis.* _ *State v. Hays,* 52 Mo. 578.

*Dysart & Mitchell* and *Charles P. Hess* for respondent.

The funds mentioned in plaintiff's petition are not State funds, and the State would have no right of action in respect to said funds, even if it were admitted that they had been misappropriated. It has been the policy of this State, since the adoption of the constitution of 1875, to keep the State revenue proper separate and distinct from

county and other corporate revenues. The State can only tax for State purposes, and is prohibited from imposing taxes upon counties, cities, towns and other municipal corporations; and, in fact, has adopted the most complete and radical system of corporate autonomy of any State in the Union. Const. 1875, art. 10, §§ 1, 8, 10, 11, 15, 17, 19, 20; also art. 4, § 43; R. S. 1879, §§ 6658, 6663, 6733, 6750, 6769, 6780, 6781, 6782, 6891. As to duties of State officers respecting State revenue. Chap. 164, p. 1478, and art. 2 of said chap., p. 1493; R. S., §§ 5366, 7131, 5378, 7021, 7031, 7434, 7103, 7106. Township organization prevails in Macon county, and a reference to the constitution and laws passed thereunder show that large and important powers and privileges have been conferred upon counties, townships, school districts, central or special school districts, cities and towns. They are invested with the power of self-government; with the powers and privileges of corporations; to acquire, hold and sell property; to sue and be sued. A similar policy prevails in Michigan. *Perley v. Muskegon Co.*, 32 Mich. 132. In that state the state cannot sue for county revenue illegally disposed of by the county court. *Att'y Gen. v. Moliter*, 26 Mich. 444. The constitution forbids this State to loan its credit or contract debts, etc. But allows counties and other municipalities, under certain restrictions to create debts, and to levy taxes for their payment. Art. 4, § 44, *et seq;* art. 10, § 12; art. 9, § 19. Such debts are not the debts of the State, nor are the taxes raised for their payment the money of the State.

When Trammel, as county treasurer, received the county moneys and the township school funds, he became a debtor to said county and school townships, and was liable upon his bond to account for and pay the same at all events. He had the right to deposit it in the Macon Savings Bank, but took the risk of its being on hand when required for disbursement, and when so deposited, he became the sole creditor of said bank. *State v. Powell*, 67 Mo. 395; *State v. Moore*, 74 Mo. 413; *Perley v. Muskegon,*

32 Mich. 132; *Swartwout v. Mechanics' Bank,* 5 Denio 555; *Inhab., etc., v. Bell,* 9 Met. 499; R. S. 1879, § 1328; New Const. 1875, art. 10, § 17; *Thompson v. Tp. Trustees,* 30 Ill. 99; *State v. Harper,* 6 Ohio St. 607; *Halbut v. Martin Co.,* 22 Ind. 125; *Inhab., etc., v. Hazzard,* 12 Cush. 112; *U. S. v. Prescott,* 3 How. 578; *Supervisors v. Dorr,* 25 Wend. 440; *Comm. v. Comley,* 3 Pa. St. 372.

The State has no right of priority for its claims against an insolvent by the common law. Such right rests exclusively on statutes, and such statutes, being in derogation of common right, will be strictly construed. *Freeholders, etc., v. State Bank,* 29 N. J. Eq. 268; *s. c.,* 30 N. J. Eq. 311, 339; 1 Kent Com.; side p. 247; 8 Cent. L. J. 62; *State v. Harris,* 2 Bailey 598; *Commissioners v. Greenwood,* 1 Dess. Eq. 449; *Keckley v. Keckley,* 2 Hill Ch. 256; *Anderson v. State,* 23 Miss. 459. The priority of the State, when granted by statute, is confined to debts of the State, where the State had a right of action in its own right. *Bank v. Gibbs,* 3 McCord 377; *Field v. Wheatley,* 1 Sneed 351.

HOUGH, C. J.—P. Trammel, treasurer of Macon county, deposited in the Macon County Savings Bank, from time to time, between November 2nd, 1880, and February 15th, 1882, certain county and township funds, lawfully in his possession as such treasurer, which were entered on the books of the bank to the credit of "P. Trammel, Treasurer;" and on the last mentioned date, the balance so held by said bank amounted to $39,522.84. On the said 15th day of February the bank failed, and made an assignment for the benefit of all its creditors. Thereupon a claim for said balance was presented in the name of the State to the assignee, and an allowance thereof demanded, as a preferred claim under the provisions of the act of February 11th, 1881. That act is as follows:

Section 1. Whenever any person indebted to the State of Missouri is insolvent, or whenever the estate of any deceased debtor in the hands of the executors or ad-

ministrators is insufficient to pay all the debts due from the deceased, the debts due to the State of Missouri shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor not having sufficient property to pay all his debts makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed; Provided, That nothing in this act contained shall be construed to interfere with the priority of the United States as secured by law, or the payment of the expenses of the last sickness, wages of servants, demands for medicine and medical attendance, during the last sickness of the deceased, nor funeral expenses.

Section 2. Every executor, administrator, assignee or other person, who pays any debt due by the person or estate for whom or for which he acts before he satisfies and pays the debts due to the State of Missouri from such person or estate, shall become answerable in his own person and estate for the debts so due to the State of Missouri, or for so much thereof as may remain due and unpaid.

Section 3. Whenever the principal in any bond given to the State of Missouri is insolvent, or whenever such principal being deceased, his estate and effects which come to the hands of his executor, administrator or assignee, are insufficient for the payment of his debts, and in either of such cases, any surety on the bond, or the executor, administrator or assignee of such surety, pays to the State of Missouri the money due upon such bond, said surety, his executor, administrator or assignee shall have the like priority for the recovery and receipt of the moneys out of the estate and effects of such insolvent or deceased principal as is secured to the State of Missouri, and may bring and maintain a suit upon the bond in law or equity in his own name for the recovery of all moneys paid thereon.

The assignee refused to allow the claim presented as a preferred claim due to the State, but allowed the same in

the name of P. Trammel, Treasurer, for $39,522.84, payable *pro rata* out of the bank assets, as other non-preferred claims, and this action of the assignee was affirmed by the circuit court. The questions presented are as to the right of the State to maintain this proceeding, and to claim priority of payment under the provisions of the act of 1881, above quoted.

It was decided in the case of the *State ex rel. Township, etc., v. Powell*, 67 Mo. 395, that the treasurer of a school

I. COUNTY AND TOWNSHIP FUNDS: action by the state to recover.

township is liable on his official bond for school funds deposited in bank and lost through the failure and insolvency of the bank, although he was not guilty of any want of care or prudence in failing to ascertain its financial condition; that when he deposited the school money in his hands to his credit as trustee and treasurer, the bank simply became indebted to him in his official capacity, and he took the risk of being able to collect the money when he should require it. This decision was affirmed in *State ex rel. Mississippi Co. v. Moore*, 74 Mo. 413, in which case it appeared that funds of the county were lost by reason of a deposit thereof by the county treasurer in a bank which failed. In both of these cases the suit was on the bond of the officer. This proceeding is instituted by the State against the assignee of the depositary to recover county and township funds deposited by the officer.

The State has an undoubted right to dispose of the revenues collected under its authority for county and township purposes, as it may see proper, when such disposition does not impair the obligation of some contract; but having once provided by law how such revenues shall be disposed of, no other or different disposition can be made of the same, except by the exercise of the legislative power of the State. Under the laws now in force, the funds in question here belong to the county and the townships, and the State has no right to sue for the recovery of such funds except in actions brought to the use of the county, on the

bonds of officers, which are by law required to be given to the State for the use of the county. *State ex rel. Saline Co. v. Sappington*, 68 Mo. 454. Where the action is not on a bond given to the State, the suit should be brought in the name of the county. *Lafayette Co. v. Hixon*, 69 Mo. 581; and in counties where the township organization law is in force, in the name of the township.

But if the funds in question were specifically the revenues of the State, as contradistinguished from the revenues of the county, and were required by law to be paid into the State treasury, to be disbursed for the support of the State government proper, no action could be maintained by the State even against the official custodian of such funds, until he had made default in the payment thereof to the State treasurer, as required by law. No such default appears in this record. The conceded insolvency of the county treasurer, will not, of itself, give a right of action; there must be an actual default in payment as provided by law. The treasurer may meet his obligations to the State notwithstanding his insolvency. It certainly cannot be seriously contended that the State may sue a depositary of the county treasurer to recover money wrongfully withheld from the treasurer by such depositary before the State has any right of action against the treasurer. If such action could be maintained, and the State should recover, the money recovered, if not then due to the State, would have to be again placed in the hands of the treasurer who is entitled to the custody thereof, until required by law to pay it to the State, and the treasurer could again deposit it, and perhaps render another action by the State necessary, to again restore it to the custody of the officer. The exercise of such a guardianship as this over State and county officials charged with the duty of collecting the public revenues, would manifestly be absurd.

2. STATE FUNDS: action for.

Furthermore, the State does not sustain the relation of creditor to the depositary of the officer. By the decisions

3. STATE FUNDS DEPOSITED IN BANK. above cited, the officer is the creditor, and the bank is the debtor of the officer, and the officer alone can maintain an action to recover funds deposited by him. In all ordinary cases, the State must rely upon the bond of the officer, and has no right to pursue the defaulting depositaries of the officer, except by way of garnishment on execution against the officer. In case, however, of fraudulent collusion between the officer and the depositary, it may be that the State would have a right in equity to pursue the funds of the State in the hands of the fraudulent possessor, in the event of the insolvency of the officer and his sureties, but, even then, not as a preferred creditor under the act of 1881.

That act was never intended to authorize a proceeding like the present. The 3rd section of the act, which provides 4. ——. that when the sureties of an insolvent principal in any bond given to the State, shall pay the amount due upon such bond, they shall have the same priority against such insolvent principal, or his estate, as is secured to the State, and also a right of action on the bond, makes it evident, we think, that the legislature never contemplated giving any priority to the State in the assets or estates of persons who might be indebted to such insolvent principals; and that, for the very simple reason that such principals themselves have no such priority.

But notwithstanding the decisions heretofore cited, it is urged on behalf of the State that Trammel had no right 5. ——: "loaning out." to make a general deposit of the county revenues held by him, for the reason that such deposit amounted to a loan of the money to the bank, which is, by section 1327 of the Revised Statutes, declared to be a felony, and that the bank, therefore, could not in law become a debtor to Trammel on account of said funds, and the same are not subject to the demands of the creditors of the bank, but must be restored to the plaintiff as the real owner thereof. The right of the State to the funds in question has already been passed upon. As to the other

point: It is doubtless true that every general deposit is so far, in effect, a loan, as to create the relation of debtor and creditor between the bank and the officer; (Morse on Banking, 28;) but, we are not, therefore, inclined to hold that general deposits in bank by county and State officials, other than the State treasurer, whose duties in this regard are prescribed by the constitution, are within the inhibition of section 1327, *supra*.

That section is as follows: " No such officer, agent or servant," (State, county or city official,) "shall loan out, with or without interest, any money or valuable security received by him or which may be in his possession or keeping, or over which he may have supervision, care or control, by virtue of his office, agency or service; and any such officer, agent or servant so loaning such money or valuable security, on conviction thereof by indictment, shall be punished by imprisonment in the penitentiary not less than two years, or by a fine not less than $500." Section 1328 provides that when any such officer shall make any contract with any person or corporation, by which he is to receive any benefit or advantage from the deposit with such person or corporation of funds in his hands as such officer, such agreement, as to such officer, shall be null and void, but the State may sue for and recover all such benefit or advantage, as would by the terms of the contract have accrued to the officer. Section 1329 provides that any officer who shall make any such contract as is described in section 1328, or who shall receive any benefit or advantage from any deposit by him of funds held by him as such officer, shall be punished by imprisonment in the penitentiary, or by fine not less than $500.

These sections were all enacted at the same time, and appear for the first time in the revision of 1855, and when construed together manifestly indicate a purpose on the part of the legislature to discriminate between a deposit in bank for safety and convenience, and an ordinary loan. Section 1327 punishes the making of all loans, whether

made for profit or not, and section 1329 punishes, not the making of a deposit simply, but the making of a deposit with a view to profit on the part of the officer. The object of sections 1328 and 1329 is to compel the officer to look alone to the security of the funds in selecting a depositary, and not to his own emolument, and these sections impliedly sanction deposits when they are not made in violation of their provisions.

The judgment of the circuit court will, therefore, be affirmed. The other judges concur.