CASE 71—FOLLOWING TRUST FUNDS—MAY 13.

## New Farmers Bank's Trustee v. Cockrell, Receiver.

APPEAL FROM MONTGOMERY CIRCUIT COURT.

TRUST FUNDS.— A trustee who, in carrying out the provisions of his trust, deposits the trust funds in a bank with an agreement that he is to receive interest on same, becomes merely a creditor of the bank and when the trust funds become commingled with the general funds of the bank and the bank then makes an assignment the trustee is not entitled to payment as a preferred creditor.

STONE & SUDDUTH AND JOHN C. MILLER FOR APPELLANTS.

1. The deposit of the trust funds in the bank by the trustee created the relation of debtor and creditor only, between them. Taylor's Admr. v. Taylor's Assignee, 78 Ky., 471; Williams v. Rogers, 14 Bush, 788.

2. Admitting that the bank was the real trustee and receiver, yet appellee has not traced the trust funds into the hands of the assignee, and therefore is entitled to no preference. Allen v. Russell, 78 Ky.,112; Ellis v. Johnson, 4 Ky. Law Rep., 991; Story's Eq. Jur., 1259; Commercial Natl. Bk. v. Armstrong, 39 Fed. Rep., 684; Wetherell v. O'Brien, 140 Ill., 151; Ill. Bank v. First Natl. Bk., 15 Fed. Rep., 858; Bank v. Weems, 6 S. W. R., 802; McClure v. Board, 34 Pac. R., 34; St. Louis Brew. Assn., v. Austin, 13 So. Rep., 908; Cavin v. Gleason, 105 N. Y., 256; Anhauser-Busch Assn. v. Bank, 53 N. W. R., 1037; Nonotuck Silk Co. v. Flanders, 58 N. W. R., 383; Shields v. Thomas, 14 So. Rep., 484.

New Farmers Bank's Trustee v. Cockrell, Receiver.

**C. P. CHENAULT,** ON THE SAME SIDE, IN A BRIEF AND SUPPLEMENTAL BRIEF.

1. The loan of money to a bank by a trustee was in furtherance of the trust and not in violation of it. The bank was therefore not a trustee for the original beneficiaries. Mills, &c., v. Swearinger, &c., 67 Tex., 270; Beach on Trusts, &c., sec. 98.

2. If the bank were a trustee the appellee's claim was not a preferred claim. Hampton v. Morris, 2 Met., 336; McKee v. Scobee, 80 Ky., 124.

3. The appellee had no preferred claim under the voluntary assignment law of 1894 even if that law were applicable.

4. If it be contended that the cash in bank at the time of assignment can be said to be the trust funds, the case of Phil. Nat. Bk. v. Downd, 2 L. R. A., 480, clearly shows the contrary.

**.W. A. SUDDUTH** AND **JOHN C. MILLER** IN A SUPPLEMENTAL BRIEF FOR THE APPELLANT.

1. There being no attempt on the part of plaintiff to trace the alleged trust funds into the hands of the assignee of the bank, he is not entitled to a preference, even admitting that the bank was a trustee. Story's Eq. Jur., sec. 1259; Perry on Trusts, sec. 841; Pomeroy's Eq. Jur., sec. 1051; Bright v. King, 20 Ky. Law Rep., 186; Bevan v. The Bank, 19 Ky. Law Rep., 1261; National Bank v. Downd, 38 Fed. Rep., 172; Peters v. Bain, 133 U. S., 670; National Bank v. Armstrong, 39 Fed. Rep., 684; Bank v. Latimer, 67 Fed. Rep., 27; Brewing Assn. v. Clayton, 56 Fed. Rep., 759; Spokane County v. Clark, 61 Fed. Rep., 538; Nonotuck Silk Co. v. Flanders, 58 N. W. R., 383 (overruling McLeod v. Evans, 66 Wis., 401); Holmes v. Gilman, 138 N. Y., 369; Little v. Chadwick, 151 Mass., 109; Brewing Assn. v. Austin, 13 Sou. Rep., 98; Shields v. Thomas, 14 Sou. Rep., 84.

2. The relation between the depositor and the bank is that of creditor and debtor. Taylor's Admr. v. Taylor's Assg., 78 Ky., 471; Williams v. Rogers, 14 Bush, 788.

3. The trust then attaches to the debt, not to any particular fund in the bank in which the trust money may have been placed or invested. Little v. Chadwick, 151 Mass., 109.

4. An assignee for the benefit of creditors, represents his assignor only to the extent of the character and amount of the assets received, and can only be made to restore the trust fund in full to the exclusion of other creditors when that trust has been traced into and identified in his hands.

**TYLER & APPERSON** FOR THE APPELLEE.

1. The New Farmers' Bank was in fact a trustee for the funds in controversy not only by express agreement, but also by impli-

cation from having come into possession of same with notice of their trust character. Beach on Trusts, secs. 98, 689.

2. If a trustee invests trust property or its proceeds in other property, it is optional with the *cestui que trust* whether he will follow the fund in the substituted property or hold the trustee personally responsible. Beach on Trusts, sec. 231.

3. A trust fund can not be followed into the hands of a *bona fide* purchaser or holder for value without notice. Beach on Trusts, sec. 231.

4. Appellant is the assignee of the New Farmers' Bank for creditor generally and is not a purchaser for value, but takes the estate "subject to all the infirmities of every character, to which it was subject while in the hands of the bank." Beach on Trusts, sec. 615; Story's Eq. Jur., sec. 1078; Corn v. Sims, 3 Met., 391; Bowles v. Bowles, 80 Ky., 529; Bank of Commerce v. Payne, 86 Ky., 446; Longdale Iron Co. v. Swift's I. & S. Works, 91 Ky., 191; Chenault, Recr., v. Bush, 84 Ky., 528.

5. Although the relation between a bank and its depositor is that merely of a debtor and creditor, yet the funds when deposited in the bank by Mitchell being impressed with a trust they will remain subject to the same trust. Third Nat. Bk. v. Gas Co., 36 Minn., 75; Cen. Nat. Bk. v. Conn. Mut. Life Ins. Co., 104 U. S., 54.

6. The bank received said funds with notice of their trust character and carried same on its books as such up to its assignment to appellant, which received the bank's estate impressed with the same trust, and with notice thereof. This is sufficient identification of the fund and it went into and constituted a part of the notes and bills and other assets of the bank on hand at the time of the assignment, and the bank's estate having been augmented by the amount of these trust funds, the *cestui que trusts* are entitled to have same paid by appellant out of it in preference to general creditors. Beach on Trusts, secs. 98, 230, 689, 700; U. S. v. Inhabitants of Waterborough, Davies, 154; Taylor v. Sir Thomas Plumer, 3 Maul & Selw., 562; Ellis v. Johnson, 4 Ky. Law Rep., 991; Bank v. Rice, 45 Pac., 515; Boyer Ind. School Dist. v. King, 80 Iowa, 497; Davenport Plow Co. v. Lamp, 80 Iowa, 722; Myers v. Board of Education, 51 Kan., 87; 37 Am. St. Rep., 263; Peak v. Ellicott, 30 Kan., 156; 46 Am. Rep., 90; McLeod v. Evans, 66 Wis., 40; 57 Am. Rep., 287; Harrison v. Smith, 83 Mo., 210; 53 Am. Rep., 571; Stoller v. Coates, 88 Mo., 514; Central Nat. Bk. v. Conn. Mut. L. Ins. Co., 104 U. S., 54.

7. The trust asserted in the case at bar is upon a higher plane than an ordinary trust; being a fund in court it is still subject to the order of the chancellor. 20 Am. & Eng. Ency. of Law, pp. 11, 12, 14, 109, 110, 137.

JUDGE DuRELLE DELIVERED THE OPINION OF THE COURT.

William Mitchell filed suit in the Montgomery Circuit Court against the appellant, alleging that he had been appointed by order of court in an action in said court of Anderson's administrator v. Annie Dooley and others, as trustee and receiver for the Hocker children; that a large fund had come into his hands, of which he had deposited two sums, aggregating nearly $2,300, in the New Farmers' Bank, under an agreement that the bank should repay him, as such trustee and receiver, the amounts deposited, with interest; that said funds were deposited by him in his trust capacity, and were trust funds in the hands of the bank, and that he was entitled to be paid the amount of them in full before the general creditors of the bank; that the bank had made a general deed of assignment for the benefit of its creditors, and, the trustee thereby appointed having failed to qualify, the appellant was appointed by the court, and had qualified and acted as trustee; that he, Mitchell, was nominally acting as receiver and trustee of the Hocker children, but the bank was the real receiver and trustee.

A demurrer having been sustained to the petition, an amended petition was filed, alleging that, at the time of Mitchell's "appointment as such receiver, said bank was desirous of obtaining the funds which had thus come to his hand, and was willing to pay the aforesaid interest, thereon to obtain same as a deposit and at its instance and for its benefit plaintiff was induced and authorized to seek said appointment as receiver, and to qualify as such; plaintiff at that time being cashier or president of the said bank. Plaintiff states that from the time that said funds were deposited in said bank as aforesaid until its assignment to R. B. Young, who failed to

qualify, they were recognized by said bank and its officers as trust funds, subject to the control of this court, and said bank as the real receiver and plaintiff as nominal receiver only; that said funds were, from the time of their deposit in said bank as aforesaid to its assignment, carried on its books to his respective accounts as trustee and receiver aforesaid, separate and distinct from all other accounts, and so remain to-day."

Mitchell having died, and appellee having been appointed in his place as receiver of the fund, the latter was substituted as plaintiff.

A demurrer to the petition as amended was overruled, and, appellant standing by its demurrer, it was adjudged that appellee should recover the amounts claimed, and that they were trust funds and preferred claims against the assets of the bank.

It is not necessary to consider whether there was inconsistent pleading in the petition; nor, in the view we take of the case, is it essential to decide whether, under the averments of the petition as amended, the bank was the real trustee of the fund, though it would seem that the averments as to the deposit, taken in connection with the agreement to pay interest, would make it a loan by Mitchell to the bank, the money being placed to his credit as trustee, and showing that the bank was indebted in that sum to the trust fund. (Mills v. Swearingen, 67 Tex., 270, [3 S. W., 268]). There is no averment indicating that the loan was in violation of the trust, and so known to be by the bank. On the contrary, the presumption from the averments is that Mitchell was authorized to make an investment or loan of the fund, so as to produce an income for his *cestuis que trustent*, and would have been derelict had he not done so.

But, assuming that, by virtue of the transaction stated in the petition as amended, the bank did become trustee, we shall consider the question whether this entitles the beneficial owners of the fund to subject the bank's assets to the payment of their claim, to the exclusion of the other creditors.

On behalf of appellee it is urged that it is unnecessary to trace the trust fund into the hands of the assignee, it being admitted by the demurrer that the bank received it with notice of the trust; that it thereby became in fact the trustee, and its assignee occupied no better position with reference to the fund than the bank did; that, having mingled this fund with its other money and used it in its regular business, the assets of the bank were thereby increased, and the *cestuis que trustent* were entitled to have their money refunded out of the assets in the hands of the assignee, to the exclusion of the general creditors. In support of this contention counsel relies upon Beach on Trusts and Trustees, section 689, where it is said:

"In a recent case [Banks v. Rice (Colo. App.), 45 Pac., 515] it was held that where one mingles money of another with his own, and then expends the fund thus created in his own business for different purposes, in some of which the money can not be traced, the law will presume such other's money—it being impossible to determine what proportion of it was used for each purpose—was all used for purposes in which it can be traced, and, when that purpose was the purchase of new stock for the business, the fact that the identity of the original stock was changed by sale and replenishment is immaterial, so long as the fund remains in the business." Beach on Trusts and Trustees, section 700, and a number of other cases, are cited in support of this view.

It is to be obcerved that in a number of these cases the trust fund was lent in violation of the trust, and without authority to make the loan, and with knowledge of that fact on the part of the borrower.

Especial reliance is placed upon the case of Myers v. Board of Education, 51 Kan., 87, [37 Am. St. R., 263; 32 Pac., 658]; a case almost exactly on all-fours with the case at bar, in which the treasurer of the school funds deposited them in a bank of which he was manager. The fund had been mingled with the funds of the bank, and used in paying its creditors. The bank assigned, and neither the money nor any specific property into which it had been converted could be clearly traced, in the hands of the assignee. The Kansas court after quoting Story's Equity, 1259, said:

"The modern doctrine of equity, and the one more in consonance with justice is that the confusion of trust property so wrongfully converted does not destroy the equity entirely, but that when the funds are traced into the assets of the unfaithful trustee, or one who has knowledge of the character of the fund, they become a charge upon the entire assets with which they are mingled. . . . It would seem to be immaterial whether the property with which the trust funds were mingled was moneys, or whether it was bills, notes, securities, lands, or other assets. As the estate was augmented by the conversion of the trust funds, no reason is seen under the equitable principles which have been mentioned, why they should not become a charge upon the entire estate."

Before proceeding to consider whether this doctrine is law in Kentucky, it may be said that it is conceded by appellant that, if the money could be traced, it, or property in which it had been invested, could be subjected to the payment of

appellee's claim.   It is conceded by appellee that the actual money can not be traced, but it is contended that the fund is traceable by reason of the fact that it was carried upon the books of the bank to the credit of Mitchell as trustee.   In this there seems to be some confusion. From the allegations of the petition we must conclude that the money (as in the Kansas case) was used by the bank in its regular business, lent to its customers, and used in paying its debts.   The fact that the account stands upon the bank's books in favor of Mitchell as trustee does not in any way identify the fund which that account shows that the bank owed to Mitchell, trustee.   The fund is not thereby identified, any more than it would be if Mitchell had used the money in his own business, expending it in ways which could not be traced, but charging it to himself upon his private books.   Whatever that account could be made to produce would doubtless be subject to the trust, but the keeping of such an account does not in any way identify the fund.

As   said   by   Judge   Hines   in   Taylor's   Adm'r   v. Taylor's Assignee, 78 Ky., 471, quoting from Williams v. Rogers, 14 Bush, 788:   "Whenever a deposit is made in a bank, the relation of debtor and creditor is established between the bank and the depositor, *the identity of the particular money is lost,* and the relation between the parties continues the same, whether it is an ordinary or time deposit."

If   Mitchell   had   deposited   the   fund   to   his individual credit, the bank's indebtedness to him, or whatever could be collected from the bank upon that account, if the bank were insolvent, could be subjected to the claim   of   the   beneficiaries, provided   it could be shown that the indebtedness of the bank to Mitchell was

created by the loan of their money; and so whatever is realized upon the claim of the trustee for the Hocker children can be subjected to the payment of their claim.

It is admitted by counsel for appellee that the general rule before the cases cited from Beach was as stated in Story, section 1259, as follows:

"The right to follow a trust fund ceases when the means of ascertainment fail, which, of course, is the case where the subject-matter is turned into money, and mixed and confounded in a general mass of property of the same description."

And see Perry on Trusts, section 841; Pomeroy's Equity Jurisprudence, 1058.

The three cases from Wisconsin which support the doctrine contended for by appellee have been overruled by the Supreme Court of that State in Noriotuck Silk Co. v. Flanders, [58 N. W., 383].

We have been cited to no Kentucky case changing the rule laid down in Story. Ellis v. Johnson, 4 Ky. Law Rep., 991, does not appear to do. so. In that case it was held that the trust fund could be "distinctly traced," and from the abstract it would seem that it was invested in real estate.

In Beavan v. Citizens' National Bank, 19 Ky. L. R., 1261, [43 S. W., 242], it appeared that bank stock was taken by a guardian in her own name, and paid for by check upon her personal account, to the credit of which her individual money, as well as trust funds, was indiscriminately deposited; and the court held that the trust moneys had been so intermingled with her individual money that they could not be distinguished. Said the court, through Judge Burnam:

"To follow the money, however, and impress it with the

trusts, as against innocent third persons, it must be distinct-ly traced and clearly proven to have been invested in the security sought to be subjected; and if the trust fund has consisted of money, and has been mingled with other moneys of the trustee in one mass, undivided and undistinguishable, and the guardian has made investments generally from the money in his possession the *cestui que trust* can not claim specific lien upon the property or funds constituting the investment. Hill on Trustees, p. 522; Ferris v. Van Vechten, 73 N. Y., 118."

In King v. Noland, 20 Ky. Law Rep., 186, [45 S. W., 508], a trust fund of $1,600 was distinctly traced as being invested in a house, the title to which was taken in the name of the trustee, and in a contest between the *cestui que trust* and an execution creditor it was held that, so far as that fund was concerned, the claim of the *cestui que trust* was superior to that of the creditor, but as to the remainder of the purchase money, which was paid by check upon her individual account, made up of her own funds and trust funds intermingled, the rights of the creditor were held to be superior.

. Said the court in that case:

"If the trustee has appropriated it to his own use, and mingled it with other money belonging to him, so that it can not be distinguished from his own funds, and made investments from such common fund, creditors are entitled to subject the property as his, and the *cestui que trust* can have no specific lien upon either the property or the money so invested. (Hill on Trustees, 522; Beavan v. Citizens' National Bank, 19 Ky. L. R., 126, [43 S. W., 242])." And see Robinson v. Woodward, 20 Ky. L. R., 1142, [48 S. W., 1082]; and Woodring v. White, 12 Ky. Law Rep., 505.

In Philadelphia National Bank v. Dowd, 38 Fed. Rep., 173, commercial paper was indorsed to the bank of which Dowd became receiver, collected, and the proceeds mingled with other moneys of the bank, instead of being forwarded. An equitable lien was claimed on behalf of the Philadelphia bank. The court held that, when Dowd's bank mingled the money collected with its general funds, it was—if a breach of trust was committed thereby—a conversion of such money, and the plaintiff became a simple contract creditor, with no claim that had a preference at law over another simple contract debt. Said Seymour, J., delivering the opinion of the court in reference to a number of cases cited by appellee:

"I look upon these cases as introducing a new principle into the old and well-known doctrine of equity, which, with the greatest deference to the courts deciding them, I do not feel at liberty to follow, in advance of any adjudication by the Supreme Court."

A few months later the case of Peters v. Bain, 133 U. S., 670 (10 Sup. Ct., 354), was decided by the Supreme Court. In that case it appears by the syllabus that:

"The individual partners in a private bank were also directors in a national bank, and by reason of their position became possessed of a large part of the means of the national bank, which they used in their own business. They assigned all their property to trustees for the benefit of their creditors. The national bank also suspended, and went into the hands of a receiver: Held, That the receiver was entitled to the surrender of such of the property as had been actually purchased with the moneys of the bank, as he might elect, but that purchases made and paid for out of the general mass could not be claimed by the receiver, unless it could be shown that the moneys

of the bank in the general fund at the time of the purchase were appropriated for that purpose."

Said Chief Justice Waite, deciding the case in the circuit court:

"The payments were all, so far as now appears, from the general fund then in possession and under the control of the firm. Some of the money of the bank may have gone into this fund, but it was not distinguishable from the rest. The mixture of the money of the bank with the money of the firm did not make the bank the owner of the whole. All the bank could in any event claim would be the right to draw out of the general mass of money, so long as it remained money, an amount equal to that which had been wrongfully taken from its own possession and put there. Purchases made and paid for out of the general mass can not be claimed by the bank, unless it is shown that its own moneys then in the fund were appropriated for that purpose. Nothing of the kind has been attempted here, and it has not even been shown that, when the property in this class was purchased, the firm had in its possession any of the moneys of the bank that could be reclaimed in specie. To give a *cestui que trust* the benefit of purchases by his trustees, it must be satisfactorily shown that they were actually made with the trust funds."

When the case was appealed, the Supreme Court, through Chief Justice Fuller, quoted the opinion of Mr. Justice Bradley in Frelinghuysen v. Nugent, 36 Fed. Rep., 229, 239.

"Formerly the equitable right of following misapplied money or other property into the hands of the parties receiving it depended upon the ability of identifying it, the equity attaching only to the very property misapplied. This right was first extended to the proceeds of the property, namely, to that which was procured in place of it by ex-

change, purchase,.or sale; but if it became confused with other property of the same kind,. so as not to be distinguishable, without any fault on the part of the possessor, the equity was lost. Finally, however, it has been held as the better doctrine that confusion does not destroy the equity entirely, but converts it into a charge upon the entire mass, giving to the party injured by the unlawful diversion a priority of right over the other creditors of the possessor. This is as far as the rule has been carried. The difficulty of sustaining the claim in the present case is that it does not appear that the goods claimed—that is to say, the stock on hand, finished and unfinished—were either in whole or in part the proceeds of any money unlawfully abstracted from the bank." The court then said:

"The same difficulty presents itself here, and while the rule laid down by Mr. Justice Bradley has been recognized and applied by this court (Baltimore Cent. National Bank v. Connecticut Mut. L. Ins. Co., 104 U. S., 54, 67, and cases cited), yet, as stated by the Chief Justice, 'purchases made and paid for out of the general mass can not be claimed by the bank, unless it is shown that its own moneys then in the fund were appropriated for that purpose.'"

The Supreme Court has, therefore, carried the doctrine further than it has been carried in any Kentucky case to which we have been cited. But the rule, even as there stated, does not sustain the contention of appellee. The same difficulty presents itself here. It does not appear by any averment that any of the trust fund was contained in the assets of the bank which came to the hands of the assignee.

The act of March, 1894, now in force, had not

Vol. 106]        JANUARY TERM, 1899.        591

been passed at the date of the bank's assignment, and does not, therefore, govern the distribution of the estate.

It follows, therefore, that the court erred in overruling the demurrer to the petition as amended, and the judgment is, therefore, reversed.