## Vanderpool v. Vanderpool, et al.

(Decided March 26, 1915.)

### Appeal from Whitley Circuit Court.

1. **Deeds—Conveyance from Father to Son—When Regarded as Creating a Trust.**—Although a deed from father to son may appear from its language to unconditionally convey the title to the land therein described for the consideration named in the writing, where the weight of the evidence conduces to prove that the conveyance was a mere arrangement effected by the grantor and grantee whereby the debts of the grantor were to be paid by the grantee and the title held by the latter until he should be repaid the 'sums expended by him in satisfaction of certain lien debts against the land, the conveyance will be treated as creating a trust of which the grantor's creditors were the intended beneficiaries, and that the grantee took the title conveyed as trustee, charged with the duty of executing the trust.

2. **'Trusts—Fraud of Grantee Not Permitted to Defeat Trust.**—If one obtains the legal title to property by such arts or acts, or circumstances of circumvention, imposition or fraud, or if he obtains it by virtue of a confidential relation and influenced by such circumstances as that he ought not, according to the rules of equity and good conscience, to hold and enjoy the beneficial interests of such property; a court of equity, in order to administer complete justice between the parties, will raise a trust by construction out of such circumstances and relation, the execution of which will be enforced.

H. C. GILLIS for appellant.

STEPHENS & STEELY for appellees.

### OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This action was instituted in the Whitley Circuit Court by Daniel Vanderpool, a son, and certain other children, grandchildren and heirs at law of Marion K. Vanderpool, deceased, against Sampson Vanderpool, a son, Louisa Vanderpool, the widow of the decedent, and others, also children, grandchildren and heirs at law of the decedent, to obtain: (1) The cancellation of a deed whereby the decedent and his wife, shortly before his death, conveyed to his son, Sampson Vanderpool, about two hundred and fifty acres of land in Whitley County, Kentucky; and (2) To obtain a settlement of the decedent's estate, a sale of the land, subject to the widow's right of dower or homestead therein, and, after the payment

of the decedent's debts, a distribution of the proceeds among the heirs at law in the ratio of their respective interests.

In respect to the cancellation of the deed and as grounds therefor, the petition alleged that when it was made, the decedent and his wife, Louisa Vanderpool, were both old and infirm in mind and body; that the deed was without adequate consideration and its execution procured by persuasion, undue influence and fraud on the part of Sampson Vanderpool. The latter's answer traversed the averments of the petition, but neither the widow nor other heirs at law of the decedent, made defendants to the action, answered. Following the taking of proof and submission of the case, the circuit court rendered judgment cancelling the deed in question and referring the cause to the master commissioner to report what debts were owing by the decedent's estate and, particularly, what lien debts, created by the decedent, had been paid on the land by Sampson Vanderpool. The judgment gave the latter a lien on the land for such of the lien debts as he may have paid; put the land in the hands of the master commissioner as receiver, and directed him to rent it pending the litigation. The matter of the sale of the land, as well as all other questions raised by the pleadings and not then expressly passed on, were reserved for decision until after the filing of the report of the commissioner. Sampson Vanderpool, being dissatisfied with the judgment, has appealed.

The evidence shows that there were born to Marion K. Vanderpool and his wife Louisa, twenty-six children; that twelve of these children were living at the time of the death of Marion K. Vanderpool, and, of those whose death occurred preceding his, quite a number left children surviving them. The old couple reared their children on the Whitley County farm, and there lived themselves until they were more than seventy years of age. They became enfeebled by age and found it a difficult matter to operate the farm and support themselves. This situation compelled Marion K. Vanderpool to become indebted to various parties and, finally, to mortgage the farm to secure such indebtedness, amounting, approximately, to $400.00. At this juncture his son, the appellant, Sampson Vanderpool, who had several years previously removed to the State of Idaho and there found employment as a section foreman in the service of a railroad company, wrote his father and mother inviting

them to come to him in Idaho and make their home with him, advising them, if they would do so he would send them the money to pay their railroad fare and upon their arrival get the father employment as a track walker for the railroad company by which the son was employed, and that as such track walker he could earn forty or fifty dollars per month. This invitation was accepted by the old people, and when appellant sent them the money for the trip they went to him in Idaho. Appellant did not, however, secure for. his father employment as a track walker, nor did he give the parents a home with him. On the contrary, after remaining about two months with appellant they rented and removed to a farm about forty miles from his home, where they were residing at the time of Marion K. Vanderpool's death.

It further appears from the evidence that before leaving this State, Marion K. Vanderpool was greatly worried over his inability to pay his debts, and that his main purpose in going to Idaho was to accept the employment as track walker appellant said he could obtain upon his arrival there and use the money, he supposed it would bring him, to pay his debts in Kentucky.

Shortly after he got to Idaho and while at appellant's home he and his wife executed to appellant the deed conveying him the Whitley County farm. It is stated in the deed that the consideration for the land was $1,000.00, the payment of which is therein acknowledged. But it is admitted by appellant in his deposition that the consideration was not $1,000.00 and that it was not in fact paid as stated in the deed. He claimed, however, that he had on two or more occasions sent as much as twenty or twenty-five dollars to his father while the latter was in Kentucky, and that these sums, together with the lien debts on the land he assumed in accepting the deed, constituted the real consideration he was to pay for the land. His deposition is not definite as to what he had paid or was to pay for the land, but it is apparent from other evidence found in the record that it did not, altogether, amount to half as much as the consideration expressed in the deed.

The weight of the evidence conduces to prove that Marion K. Vanderpool was an honest man; that he was anxious to pay his debts, and that, in his old age and helplessness, he saw no other way to get them paid than by such an arrangement as he made with his son, the appellant; and that he and his wife executed the deed

to appellant with the understanding on their part and the agreement on his, that he would assume and pay the debts of the father, for which the land was bound, and for his protection accept the deed and hold the title it conveyed, until he was repaid the moneys expended by him in satisfying the debts against the land; and when that had been done, reconvey the land to his father if living or, in the event of his death, share it with the latter's other heirs at law. It is apparent, therefore, that the deed created a trust, of which the grantor's creditors were the intended beneficiaries, and that appellant took the title it conveyed as trustee charged with the duty of executing the trust.

Appellant's claim that the conveyance was absolute and without condition, was in some sort corroborated by his mother in the first deposition that she gave in the case. He brought her with him to Kentucky for the purpose of taking her deposition and after it was given returned to Idaho without her. But her deposition was later retaken in the case and it is apparent from the testimony she then gave, either that the deed made by herself and husband to appellant was intended to create a trust as already stated, or that her feebleness of mind was such as to render her incapable of understanding the purpose and meaning of the conveyance.

That the conveyance created a mere trust is shown by letters written by Marion K. Vanderpool from Idaho to members of his family in Kentucky, before and about the time the deed was made, read without objection, in which, without referring to the deed, he announced a purpose to return to Kentucky and to the Whitley County farm. This he would not have done if the deed had been intended to unconditionally vest in appellant the title to that farm.

It is also patent from the evidence that appellant, down to a time shortly before the institution of this action, recognized the fact that the deed in question merely made him a trustee, and imposed upon him the duty of paying the debts of the father for which the land was liable; and that upon his being reimbursed for the debts so paid the father or his heirs at law would be entitled to a reconveyance of the land. This is clearly shown by two letters from appellant to his brother, the appellee Ben Vanderpool, both written after the execution of the deed; one of them before and the other after the death of his father, in each of which he in substance

admitted the right of the appellees and other heirs at law of Marion K. Vanderpool to share with him in the land or its proceeds.

It is further patent from the evidence that the Whitley County farm conveyed appellant by his parents was, at the time of the conveyance and is now, worth $3,000.00 or $3,500.00, in view of which, and their need of the farm to provide them a support, it is not reasonable to suppose that the grantors, if they were mentally capable of understanding the transaction, intended to irrevocably part with it at such an inadequate price as appellant claims to have paid for it. But, if we were not satisfied that the deed was intended to create a trust looking to the payment of Marion K. Vanderpool's debts, we would be constrained by the evidence to hold that its execution was procured by the undue influence or fraud of the grantee; that is, that the latter, intending to thereby secure to himself the title to the land at far less than its actual value, induced the grantors to make the deed in the belief on their part that it was a mere arrangement whereby Marion K. Vanderpool's debts were to be paid, and that the grantee, in undertaking their payment, would be protected by the deed against loss, until reimbursed therefor. The record furnishes some evidence tending to show that the feebleness of body and mind of the aged grantors, made it a matter of little difficulty for one sustaining so near a relation to them and so fully enjoying their confidence, as did the appellant, to influence their judgment and control their wills.

Considering the evidence as a whole, it is our conclusion that appellant accepted the deed with the understanding on his part, as well as that of the grantors, that it conveyed him the land in trust for the payment of his father's debts, which he, as trustee, was to satisfy and be ultimately repaid out of the land. Furthermore, we incline to the opinion, that appellant then intended in good faith to carry out the trust, but that after the death of his father his avarice caused him to forego this intention and conceive the purpose to claim that the deed in question created no trust, but unconditionally conveyed him the title to the Whitley County farm. Hence he repudiated the trust and set up claim to the farm, to the exclusion of his brothers, sisters, and the other heirs at law. Such claim the law will not permit him to enforce. Equity will always interfere to thwart an unconscionable advantage of this sort.

It is, however, insisted for appellant that if there was any fraud in the execution of the deed, it was participated in by the grantor as well as the grantee, and that in such state of case it must be held that the object of the conveyance was to defraud the creditors of Marion K. Vanderpool, in which event Marion K. Vanderpool, if living, would not be heard to complain of the fraudulent character of the conveyance, and that as he is dead, his heirs at law are likewise estopped to do so. It is sufficient to say that no such contention as this is made by the pleadings. The averment of the petition is that the execution of the deed was procured by the fraud of the grantee alone; and the answer of appellant denies any fraud in the conveyance and alleges that it was made for a valuable consideration. The evidence all shows that the sole purpose of the conveyance was to gratify the desire and intention of Marion K. Vanderpool to pay his debts, and the appellant admits in his deposition that such was the purpose of the conveyance and that the consideration therefor was his undertaking to pay the debts of his father. The case, therefore, does not come within the rule stated by appellant's counsel, which is, in cases of executed contracts, where both parties are guilty of actual fraud, a court of equity will not lend its aid to either. But there is a material exception to this rule, the exception being that where the mind of one of the actors exercises an undue influence on that of the other, equity will interfere. Anderson's Admr. v. Meredith, 82 Ky., 564.

If there was any fraud in the conveyance in the instant case, the grantor was the victim of such fraud and in no sense the accomplice of the grantee. If one obtains the legal title to property by such arts or acts or circumstances of circumvention, imposition or fraud, or if he obtains it by virtue of a confidential relation and influence under such circumstances that he ought not, according to the rules of equity and good conscience, to hold and enjoy the beneficial interest of the property, a court of equity, in order to administer complete justice between the parties, will raise a trust by construction out of such circumstances and relations, the execution of which will be enforced. Pomeroy on Equity Jurisprudence, Section 1044; Harper v. Harper, Etc., 85 Ky., 160.

As the cancellation of the deed from Marion K. Vanderpool and wife to appellant will leave the widow of

the former free to assert her dower in the land, the court should hereafter, in adjudging the sale of the land, allow her out of the proceeds the value of such dower, according to her life expectancy as shown by the insurance tables.

Judgment affirmed.