# Farmers' Bank of White Plains, et al. v. Bailey, et al.

(Decided June 10, 1927.)

(Rehearing Denied, with Modification, June 24, 1927.)

## Appeal from Hopkins Circuit Court.

1. Banks and Banking.—Where the particular bonds deposited with a bank for safe-keeping were to be returned on the surrender of the certificates of deposit properly indorsed, the deposits were "special deposits" and not general deposits, and the relation between the bank and the depositor was that of bailee and bailor, not that of debtor and creditor.

2. Trusts.—Where bank fraudulently sold bonds which were left with it as special deposits, and held by it as bailee, and converted the proceeds to its own use, a constructive trust arose in favor of the special depositors.

3. Trusts.—To recover against estate of trustee fraudulently converting trust property, it must appear that trust property or its proceeds have found their way directly into the estate of the trustee, which property must reside in the assets at the time when the claim is asserted and must not have been expended or dispensed for any purpose in the business of trustee.

4. Trusts.—Where trust money is mingled with money of the trustee, the çestui que trust is entitled to a priority of right against the entire fund over the claims of the other creditors.

5. Banks and Banking.—Where a bank has mingled trust money with its own funds and the mingled fund has not been reduced at any time below the amount of the trust fund, money paid out from such mingled fund for purposes of bank will be presumed to have been paid from its own money and not from the trust fund.

6. Banks and Banking.—Where bank holding special deposits of bonds converted the bonds and the proceeds went into the cash of the bank, and the cash balance of the bank was not shown to have been less at any time than the balance on hand when bank closed, the special depositors were entitled to a preferred claim on the funds on hand when the bank closed, payments by bank being presumptively made from its own portion of the cash, not from the portion derived from the special deposits.

7. Banks and Banking.—There was no presumption that bonds owned by bank when it closed were purchased with trust funds, but the presumption was that the bank used its own funds in purchasing the bonds.

8. Banks and Banking.—Where bank sold special deposits of bonds and converted the proceeds and thereafter became insolvent, and special depositors failed to trace the proceeds of the special deposits into bonds on hand when bank closed, they were not entitled to a preferred claim on the bonds.

9. Banks and Banking.—Where sheriff had right to make general deposit of state, county, and school taxes to his credit in bank,

such deposit was not entitled to a preference over claims of other depositors on insolvency of bank.

COX & GRAYOT and FOX & GORDON for appellants.

H. F. S. BAILEY for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE CLAY— Affirming in part and reversing in part.

For many years prior to May, 1925, the Farmers' Bank of White Plains, Ky., a corporation with a capital stock of $15,000, transacted a banking business at White Plains, Ky. W. N. Bailey and others were the owners of bonds in varying amounts aggregating about $19,500, which they deposited with the bank for safekeeping. When the bonds were deposited the bank delivered to each of the owners a certificate acknowledging receipt of his bonds and reciting that the bond or bonds would be returned to the depositor on the surrender of the certificate properly indorsed. Prior to January 1, 1925, the bank, without authority from any of the owners, sold the bonds and placed the proceeds in a fund known as the "emergency fund." However, the proceeds were not kept separate from the other funds of the bank, but were mingled with the funds of the bank out of which it continued thereafter to transact its banking business. On June 23, 1923, the bank through its board of directors declared a 100 per cent dividend and on June 30, 1923, delivered and issued to each of its stockholders a time certificate for his portion of the dividend payable 12 months from date. Between June 30, 1924, and October 1, 1924, it paid out on these certificates the sum of $13,500. On May 9, 1925, it was ascertained that the bank was insolvent, and its assets were placed in the hands of the state banking commissioner for liquidation. At that time the books of the bank showed that there had been credited to the "emergency fund" the sum of $77,576.52, and there had been charged against that fund the sum of $60,573.24, leaving a balance of $17,003.28. When the bank closed its doors it had in its vaults $3,037.04 in cash, and checks which it had cashed amounting to $44.65, and was the owner of bonds of the market value of $4,094.85.

After ascertaining that the bank was insolvent and unable to pay its indebtedness in full, the banking commissioner brought suit against the bondholders for the

purpose of obtaining the advice of the court in the distribution of the assets. W. C. Durham and others, depositors and creditors, filed a petition asking that they be made parties defendant, and that they be authorized to make defense on behalf of themselves and all other depositors and creditors of the bank. L. R. Ray, sheriff of Hopkins county, filed an intervening petition alleging that he had collected taxes due the state of Kentucky, county of Hopkins, and county board of education of Hopkins county, aggregating the sum of $343.41, which he had deposited in the bank to his credit as sheriff, and asserting that he was entitled to have his claim paid in full to the exclusion of other creditors. On final hearing it was adjudged that the bondowners and Sheriff Ray were entitled to a preference in the distribution of the assets in the hands of the banking commissioner. From that judgment this appeal is prosecuted.

We shall first consider the propriety of the judgment as respects the bondowners. As the deposits were not to be returned to the depositor in kind, but the particular bonds left with the bank for safe-keeping were to be returned to the owners on the surrender of the certificates of deposit properly indorsed, there can be no doubt that the deposits were special and not general, and that the relation between the bank and each of the bondowners was that of bailee and bailor, and not that of debtor and creditor. People v. California Safe Deposit Co., 23 Cal. App. 199, 137 P. 1111, 1115; Pattison v. Syracuse Nat. Bank, 80 N. Y. 82, 36 Am. Rep. 582; Carlisle First Nat. Bank v. Graham, 100 U. S. 699, 25 L. Ed. 750; 7 C. J. 630. Hence, when the bank fraudulently sold the bonds and converted the proceeds to its own use the circumstances were such as to create in favor of the bondowners a constructive trust which a court of equity will enforce. Vanderpool v. Vanderpool, 163 Ky. 742, 174 S. W. 727; Taylor v. Fox, 162 Ky. 804, 173 S. W. 154. At one time some of the courts were inclined to the view that, if the general assets of an insolvent bank were augmented by the unlawful conversion of a trust fund, the bailor or cestui que trust was entitled pro tanto to have the amount of the converted fund declared and enforced as a preferred demand against the assigned estate of the bank over the claims of general creditors. Midland Nat. Bank v. Brightwell, 148 Mo. 358, 49 S. W. 994, 71 Am. St. Rep. 608; Davenport Plow Co. v. Lamp, 80 Iowa 722, 45 N. W.

1049, 20 Am. St. Rep. 442. But, as said in 26 R. C. L. 1356:

"Most, if not all, of these cases have, however, been overruled or greatly limited and qualified, and the generally accepted rule at the present time is that it must appear that the trust property or its proceeds have found their way directly into the estate of the trustee; that the property must be found to reside in the assets at the time when the claim is asserted, and must not have been expended or dissipated for any purpose in the business of the trustee."

And this is the rule uniformly adopted by this court. Allen v. Russell, 78 Ky. 105; Woodring v. White, 12 Ky. Law Rep. 505; Bevan v. Citizens' Nat. Bank of Lebanon, 43 S. W. 242, 19 Ky. Law Rep. 1261; Bright v. King, 45 S. W. 508, 20 Ky. Law Rep. 186; J. M. Robinson, Norton & Co. v. Woodward, 48 S. W. 1082, 20 Ky. Law Rep. 1142; New Farmers' Bank's Trustees v. Cockrell, Receiver, 106 Ky. 578, 51 S. W. 2, 21 Ky. Law Rep. 177.

The next question for determination is whether the proceeds of the bonds may be traced into the assets of the bank. The old rule that money has no earmarks, and that the blending of trust money with the money of the trustee will defeat the owner's title and compel him to stand as a mere unsecured creditor, is no longer in force. The modern rule is that confusion does not destroy the equity entirely, but converts it into a charge upon the entire mass giving to the party injured by the unlawful diversion a priority of right over the other creditors of the possessor. Peters v. Bain, 133 U. S. 670, 10 S. Ct. 354, 33 L. Ed. 696. As a part of this doctrine it is also held that, where a bank has mingled trust money with its own funds, money paid out from such funds for its own purposes will be presumed to have been paid from its own money and not from the trust funds, where the mingled fund has not been reduced at any time below the amount of the trust fund. Smith v. Fuller, 86 Ohio St. 57, 99 N. E. 214, L. R. A. 1916C, 6, Ann. Cas. 1913D, 387. No question of priority betwen the bondholders is raised. The amount of cash on hand at periods prior to the closing of the bank is not shown. It does not appear that the cash balance was ever less than the balance on hand when the bank closed. As the proceeds of the bonds were traced into the cash of the bank, and the presumption is

that the bank discharged its own obligations from its own funds, we are constrained to the view that the bondholders have a preferred claim on the cash on hand when the banking commissioner took charge.

With respect to the bonds of the market value of $4,094.85, a different question is presented. It does not appear when these bonds were bought or how they were paid for. It is not shown that any of the trust funds were used in their purchase. There is no presumption that they were purchased with the trust funds. On the contrary, the presumption is that the bank used its own funds in making the purchase. It follows that the bondholders failed to trace any of the proceeds of their bonds into the bonds owned by the bank, and, that being true, they are not entitled to a prior claim thereon.

It is suggested that, besides the cash on hand, there are other assets in the hands of the commissioner of banking, and we are asked to say whether or not the bondholders have a preferred claim on these assets. That will depend on whether or not the proceeds of the bonds may be traced into such assets, and, the case in that respect not having been developed, we express no opinion on the subject.

The propriety of that part of the judgment awarding Sheriff Ray a preference for the state, county, and school taxes as deposited to his credit is also called in question. In the case of McAfee v. Bland, 11 S. W. 439, 11 Ky. Law Rep. 1, it was held that where the trustee had the right to make the deposit, trust funds placed on general deposit were not entitled to a preference in the distribution of the assets of the bank. In the case of Smith v. Arnold, 165 Ky. 214, 176 S. W. 983, it was held that a master commissioner and receiver of a circuit court, who, in obedience to the statute, deposited the funds held by him as such officer in a bank designated as the place for the deposit of such money by an order of court, was not entitled to priority in the distribution of the bank's assets when it went into liquidation because of insolvency. Not only so, but as applied to insolvent banks in which deposits of public money have been made the better rule seems to be that in the absence of a statute or a showing of facts sufficient to create a trust, claims for such money are not entitled to a preference over the claims of the general creditors of the bank, but stand on the same footing. State v. Rubey, 77 Mo. 610; State v. Wilson, 77 Mo.

633; Board of Education v. Union Trust Co., 136 Mich. 454, 99 N. W. 373; Chosen Freeholders v. State Bank, 29 N. J. Eq. 268; Id., 30 N. J. Eq. 311. See, also, note to 8 Ann. Cas. 116. In the case at bar the sheriff had the right to deposit the funds in the bank. They were merely placed on general deposit. We have no statute giving a preference to public deposits on the insolvency of a bank. We are therefore constrained to the view that such funds stand upon the same footing as the funds of other depositors, and that the court erred in awarding the sheriff a preference.

As to the bondholders, the judgment is affirmed in part and reversed in part; as to Sheriff Ray, the judgment is reversed and the cause remanded, with directions to enter judgment in conformity with this opinion.