CASE 90—FRAUDULENT CONVEYANCES—MARCH 10, 1885.

## Anderson's Adm'r v. Merideth.

APPEAL FROM EDMONSON CIRCUIT COURT.

1. The general rule is, in cases of executed contracts, where both parties
are guilty of actual fraud, a court of equity will not lend its aid to
either.

Anderson's Adm'r v. Merideth.

2. The exception to the general rule applies where the mind of one of the actors of the fraud exercises an undue influence on the other.

3. In this state of case, although the grantor has been guilty of fraud, equity will adjudge rescission and adjust the equities between them, and will allow the grantee his expenses in managing the estate while it was in his hands.

B. LAWLESS, Sr., AND CONKLIN & McBEATH FOR APPELLANT.

1. The court below erred in giving a judgment against the administrator of Anderson for any sum.

:2. There should have been a judgment for the administrator for the full amount of all moneys collected by appellee, Merideth, with interest. There could be no lien in favor of appellee, unless he was, in good faith, holding the property as trustee and making his expenditures for his *cestui que trust.*

3. If property is fraudulently obtained or held by another, he can not in equity ask for compensation for his services.

4. The court erred in not requiring appellee to account for rents. (Dealby v. Murphy, 3 A. K. Mar., 472; James v. Langdon, 9 B. Mon., 195; Kensolving v. Pierce, 1 Met., 335; 18 B. Mon., 785; 4 Dana, 30; 7 B. Mon., 195; 5 Dana. 176.)

W. E. SETTLE AND E. W. HINES FOR APPELLEE.

1. The facts stated in the original petition did not authorize a cancellation of the conveyances from Anderson to appellee. Neither fraud nor mistake is alleged.

2. It is abundantly shown that the conveyances were made to defraud the wife of the grantor. In such case a court of equity will aid neither grantor nor grantee.

3. There is no proof of mental incapacity of Anderson.

4. The appellee was certainly entitled to compensation for managing Anderson's business, as it is alleged by Anderson himself that such was the understanding. and I believe it is not claimed by appel'ant that the amount is excessive. (Larned v. May, 7 Mar., 596; Ford v. Lewis, 10 B. Mon., 127; Jones v. Reid, 3 Dana, 540; 4 Bibb, 70; Brookover v. Hurst, 1 Met., 68; 17 B. Mon., 307; Prather v. Taylor, 1 B. Mon., 246; Wilson v. Oldham, 12 B. Mon., 60; O'Reagen v. O Sullivan, 14 Bush, 184; 4 Bush. 239; 1 Met.. 668; 4 Bibb, 70.)

CHIEF JUSTICE HINES DELIVERED THE OPINION OF THE COURT.

In 1873 and 1874 Wm. Anderson, being the owner of several parcels of land in the counties of Grayson and Edmonson, some personal property and evidences of debt, he conveyed to appellee, Merideth, four tracts

of the land for the recited consideration of $1,100, and assigned to him evidences of debt amounting to several thousand dollars. At the same time he conveyed to Vanmeter two tracts of land and delivered to him personal property of considerable value. Immediately after these transfers, Anderson went to Missouri and remained until 1877, when he returned. Shortly after Anderson's return from Missouri, he instituted this action against appellee, seeking to recover the land conveyed and the value of the evidences of debt transferred by him to appellee, alleging that the sale and transfer of the land and the evidences of debt were without consideration, and upon the agreement that appellee would re-transfer the land and re-assign such of the evidences of debt as had not been collected and paid to Anderson, when Anderson should return to Kentucky. Shortly after the institution of the action Anderson died; the action was revived in the name of Vanmeter, as the administrator of Anderson, and the divorced wife and the infant son of Anderson were made parties. The infant answered through guardian *ad litem*, making the answer a cross-petition against appellee, alleging that the conveyances and transfers by Anderson to appellee were without consideration and obtained by fraud through the undue influence exercised by appellee over Anderson, and at a time when Anderson, from age, feeble health and natural defect of mind, was not competent to transact any business.

The divorced wife and mother also filed an answer and cross-petition alleging substantially what had been alleged for the son, and, in addition, claiming that, at

the time of the pretended sale in 1874 by Anderson, there was a suit pending by her against Anderson for divorce, in which action maintenance had been allowed her and had not been paid, and that this transfer and sale was made by Anderson to appellee to defraud her out of maintenance and alimony, and that, with a full knowledge of these rights and claims of hers, and of the fraudulent design of Anderson, appellee made the pretended purchase with the design to aid the fraud of Anderson. All these allegations as to want of consideration and fraud were denied by appellee; and as to the claim of Mrs. Anderson, appellee pleaded estoppel and former adjudication, alleging that, pending the suit for alimony but after the divorce had been granted, Mrs. Anderson had caused appellee and Vanmeter to be made parties to that suit, and therein sought to subject the property conveyed and transferred to them by Anderson upon the ground that the transfer was without consideration and made and accepted for the fraudulent purpose of defeating her claim for maintenance and alimony; alleging further that, pending this proceeding by Mrs. Anderson to subject the property, appellee compromised with her and paid her $1,000 in consideration of her release of all claim against the property for maintenance, alimony or dower, and that this agreement of compromise was entered in the judgment of the court as the ground for dismissal of her action against appellee. The court below adjudged that the deeds be canceled; that appellee account for the evidences of debt transferred to him; that he be allowed a reasonable compensation for managing the property, attorneys' fees expended in collections and in the pres-

ervation of the estate against the claim of Mrs. Ander-
son; and, on report of a special commissioner, adjudged
that appellee recover of appellant the sum of $474.15,
and that appellee have a lien upon the land for the pay-
ment of that sum. From this judgment both appel-
lant and appellee appeal—appellant upon the ground
that the court erred in failing to charge appellee with
enough for property received by him from Anderson,
in failing to charge for rents and in allowing appellee
attorneys' fees and compensation for managing the
property; and appellee appeals from so much of the
judgment as rescinds the contract.

The first inquiry is, was this transfer and alleged sale
by Anderson to appellee fraudulent as to one or both?
It appears to us from a careful reading of the entire
voluminous record that there can be no doubt that the
alleged contract was intended by both the parties to it
to defraud and defeat the claim of Mrs. Anderson. The
letters written by appellee to Anderson after he went to
Missouri, and the letter of Anderson to appellee, are in
themselves to our minds conclusive. The explanation
attempted to be made of them by appellee in no way
qualifies their meaning appearing on their face. The
letter from Anderson to appellee asks for money; says
times are hard and work hard to get; inquires how
appellee is getting on with his (Anderson's) business;
asks what is being done with the mill property (being a
portion of the property conveyed to appellee), and
urges appellee to hurry up collections and send him
what appellee has "of mine on hands." The first let-
ter from appellee to Anderson informs him that there is
bad news. "The mill got burned down last March."

Says : "We are aiming to rebuild the mill if you say so. Write to me on the subject." "Times are very hard, money is very scarce." "I am getting along very slow with your business. Am doing the best I can Am getting the business in very good shape." In the same letter he enclosed an order on Vanmeter and requests Anderson to sign it and return, so that he (appellee) may collect from Vanmeter what he has belonging to Anderson, and expresses the fear that Anderson will lose it if he does not allow him to collect it, giving as a reason that Vanmeter is getting involved financially. In the same letter appellee says : "I have put some notes out and some pleads limitation, and I am renewing some. * * I think I will sell the land in a short time at a very good price."

The next letter from appellee to Anderson mentions having before written to notify Anderson of the suit above mentioned as having been brought to subject the property to the claim of Mrs. Anderson, and informs Anderson that he has compromised the claim by assigning to Mrs. Anderson one of the notes transferred by Anderson to appellee, and complains of having been compelled to pay large attorneys' fees in the case ; says he has paid out more money than he has collected; that he has contracted to sell all the lands. Says he would like Anderson to come back, but didn't think it advisable, as Lawless (attorney for and father to Mrs. Anderson) "would put you in prison." He again urges Anderson to authorize appellee to collect from Vanmeter, as he (Vanmeter) had sold all the stock and contracted to sell the land.

The next letter refers again to the settlement with

Mrs. Anderson. Tells how it was settled and says :
" We are out of it clear now, but it cost us a good deal
of money, but all the property is safe now." Tells.
Anderson that Lawless has another suit against him,
and would send for him if he knew where he (Ander-
son) was. He says : " I have brought suit on the most
of the notes, but have collected but little. As soon as I
collect I will send to you according to promise." Men-
tions again that he has contracted the land and that the
mill is doing "tolerably" well. Says : "I hope to see
you again, but you had better not come for a while."

The order referred to in these letters was never re-
turned by Anderson, and, on the return of Anderson to
Kentucky, Vanmeter appears to have accounted for the
property he received from Anderson.

There is no explanation given as to the meaning and
object of this correspondence that renders it consistent
with the claim that the pretended sale from Anderson
to appellee was for a consideration and in good faith.
The evidence tends to show that Anderson had no
money while in Missouri, and that he had none when
he returned.

There is no evidence of any payment by appellee to
Anderson, except the repeated statements made by
Anderson to the effect that he had received the money
for the land, and the testimony of two witnesses that
Anderson had money, a large sum, immediately after
the date of the pretended sale. Several witnesses tes-
tify to statements by appellee to the effect that the
sale and transfer was without consideration. In some
cases these statements are contradicted by the witnesses
for appellee, but we consider it unnecessary to notice

the evidence upon the point of fraud and no considera-
tion, as we think the evidence already referred to puts
the question of fraud beyond doubt.

That conclusion being reached, the inquiry is, does
the record exhibit a state of facts that will give a court
of equity the right to entertain appellant's complaint?

The general rule is, in cases of executed contracts,
where both parties are guilty of actual fraud, a court
of equity will not lend its aid to either, but leave each
to the consequences of his own wrong-doing. To apply
this rule the parties must be *in pari delictu*, each
equally guilty of the fraudulent intention and the
fraudulent acting, with equal knowledge and equal
willingness. When that is not the case, when there is
imposition, duress, oppression, threats, undue influ-
ence, taking advantage of necessities or weakness, the
party thus placed at disadvantage, although partici-
pating in the fraud, may be relieved in a court of
equity as against his co-wrong-doer.

The exception to the general rule applies in all cases
where the mind of one of the actors in the fraud exer-
cises an undue dominion over that of the other, whether
it results from the intellectual or physical weakness of
the one overreached or from too confiding and trust-
ing a nature. (Pomeroy on Equity, volume 2, sections
941, 942.)

The evidence in this case shows that the mind of An-
derson was weak, and that he was so trusting and con-
fiding in those with whom he was brought in contact,
and so subject to the influence of stronger wills as to
indicate that his mind bordered on imbecility. He is
shown to have been very forgetful, to have shrunk

from assuming responsibility, and to have questioned his capacity to cope with those with whom he was ·brought in contact in the transaction of business. Upon the óther hand, appellee is shown to be a man ·of shrewdness, self-reliance, that he is money getting, money loving and a man of fine business capacity and ·experience.

There is reason to believe from the record that appellee exercised this superior capacity and will over Anderson to induce him to make the trade, to leave Kentucky and to remain away, with the view of ultimately securing to himself the whole property without paying any thing therefor. Much of the evidence in this voluminous record, leading to this conclusion, is circumstantial and of such a character as not to render it practicable to discuss it in detail in the limits of an opinion; but the whole atmosphere surrounding the transaction produces a moral conviction that the con-·clusion stated is correct.

It is insisted that the court erred in giving appellee judgment for any thing because it was not claimed in the pleadings, appellee insisting throughout the progress of the case that he did not hold as trustee, but as a purchaser for valuable consideration. It is particularly insisted that there should be no allowance to appellee for services in taking care of and managing the property, because of his established fraudulent conduct in the transaction. As to these matters, the original petition filed by Anderson recognized appellee's right to compensation for services and expenditures; but this is immaterial, as the court having taken jurisdiction, as we have held, properly, it was its duty

to adjust all these matters in an equitable manner, so-
far as could be done between wrong-doers. It is not a.
case where appellee was wholly in the wrong and can
not be so treated, but must be treated, in these matters.
which are incidental to the exercise of jurisdiction in.
decreeing a rescission, as if the parties were neither·
guilty of fraud.

We will not inquire into the correctness of the rul--
ings of the court in allowing or disallowing items in
the commissioner's report, because the assignment of
error in reference to them is too general to present any·
thing for our consideration. Notwithstanding this.
conclusion, it is proper to say that we have carefully
read all the evidence in the case and that, on the whole.
case, we see no error in the rulings of the court in this.
or in any other respect.

Judgment affirmed both on appeal and cross-appeal.