## Walker v. Williamson, Executor, et al.

(Decided November 8, 1917.)

### Appeal from Pike Circuit Court.

1. Fraudulent Conveyances—Future Support.—A conveyance in consideration of future support is a voluntary one to the extent of unfurnished support, and to this extent the agreement for sup-

port is not a sufficient consideration to uphold a conveyance or transfer of his property by a debtor as against his existing creditors.

2. Fraudulent Conveyances—Preference.—A vendee in such a conveyance, when the circumstances show that the consideration if wholly executed would be grossly inadequate, and where all of the property of the debtor is conveyed, and that an undue advantage was taken of the grantor, will not be considered a purchaser in good faith so as to give him an equity for improvements which he put upon the property; but upon the subjecting of the property to the satisfaction of prior debts the vendee will be allowed preference for the sum which he expended in time or money in carrying out his contract up to the time of filing the suit.

AUXIER, HARMAN & FRANCIS for appellant.

CHILDERS & CHILDERS for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming on appeal and reversing on cross-appeal.

Smith Carter, who was 89 years old, owned a tract of land in Pike county, Kentucky, containing between 600 and 900 acres, and worth, according to the proof, from seven to ten thousand dollars, upon which he and his wife, the defendant, Sarah Carter resided, the latter being 88 years of age. The husband also owned a small amount of live stock, household and kitchen furniture and a few farming implements. He also drew a pension of $30.00 per month from the Federal Government. He had neither lineal nor collateral kindred who would inherit his property at his death, his sole dependent being his wife.

These two old people lived upon the farm and were getting along admirably, the pension, supplemented by the produce of the farm, furnishing an ample competency for them. In addition, Carter had sold timber from the land to the amount of $4,000.00, as much as $2,500.00 of which had not been spent. The cultivation of the farm was in a small way only and was perhaps done entirely by Mr. Carter, who seems to have been very active for one of his age.

With matters in this condition, some time during the summer of 1910 Carter and wife conveyed to the appellant, George J. Walker (defendant below), the entire farm upon which they lived, and all personal property belonging to Smith Carter, being all of the property, either real or personal, owned by the grantors, in consideration that Walker would support and take care of the grantors as long as they lived.

At the time of the conveyance. Carter was indebted to John Phillips in a balance on a note which had been executed in 1890, and upon which payments had been made from time to time, leaving the amount due at the time of the filing of this suit, $965.74. Phillips died testate, and appellee, Williamson (plaintiff below), was appointed executor of his will.

Carter died June 26, 1912, leaving surviving him his widow, and on August 27, 1912, this suit was filed by plaintiff as executor of John Phillips' will against the defendant, Walker, and the widow Carter, charging that the deed executed by Carter and wife to the defendant, Walker, was fraudulent as to the debt which he represented (being a previously existing one), and insisting that as against such debt the conveyance was a voluntary one, and he asked that it be set aside and held for naught and that so much of the land as might be necessary for that purpose be sold and the proceeds applied to the payment of his debt.

He further alleged that Carter died the owner of a considerable amount of personal property, the exact amount of which was unknown to plaintiff, and that there had never been any administration granted of his estate, but that the defendants, Walker and the widow, had wrongfully taken possession of the personal property and were proceeding to appropriate it, and he sought a judgment against them as administrators *de son tort.*

The answer put in issue the allegations of the petition, except the execution of the deed for the purposes therein contained was admitted, and it was affirmatively alleged that plaintiff's debt had been settled or paid; another paragraph relied upon the good faith of the transaction, especially on the part of the defendant, Walker, and that his services in carrying out the contract up to the time of the death of Smith Carter were worth $2,500.00, and that he had placed lasting and valuable improvements upon the land which enhanced its value $6,000.00, and he asked that he be given a prior lien for these two sums should the court determine that the deed ought to be canceled and any portion of the land appropriated to plaintiff's debt.

Appropriate counter pleadings put in issue the affirmative pleas contained in the answer, and upon trial the court adjudged that the deed should be canceled and gave plaintiff a lien for his debt, subject, however, to a

prior lien adjudged in favor of plaintiff, Walker, for the sum of $5,000.00, and ordered the land sold and the proceeds applied to the payment of the parties' claims in the order named. To reverse that judgment the defendant Walker prosecutes this appeal, followed by a cross-appeal granted by this court in favor of plaintiff.

In addition to what has been stated, the facts showing the situation and the relation of the parties to the conveyance existing at the time it was made and prior thereto, briefly stated, are: That Walker was not a native of that vicinity but had come into it as manager and operator of a saw mill owned by a company which was either engaged in or had completed the sawing of the timber which had been purchased from Carter. He had known Carter for about twelve years, but not intimately except for about three years preceding the execution of the deed. According to defendant's testimony he knew that Carter and wife had no living relatives, or at least it was so reputed, and he, himself, testified that the old man for some unaccountable reason formed a great liking for him and in the early spring of 1910 (as defendant testifies) Carter, to the great surprise of the defendant, broached the subject and made a proposition to convey all of the property covered by the deed for the consideration and upon the terms therein expressed. This was so surprising to Walker that he took time to consider the proposition, but in a few days concluded to accept, and he, himself, procured the attorney for the company for which he was working, in the absence of Carter, to prepare a writing evidencing the trade, it not being a formal deed; upon the execution of that writing Walker took possession and charge of the premises, but he did not procure a deed for something like three months thereafter; the deed was prepared by a man by the name of Campbell, who was one of the men for whom Walker was working.

After Walker took charge he repaired the dwelling in which the Carters were living, it having previously been damaged by fire, and built a residence for himself, and perhaps one or more tenant houses. He also constructed some new fencing and cleared up some old ground which had been overgrown with sprouts, bushes and briers. The greater part of this work was done during the three months intervening between the time of the trade and the execution of the deed. At the time of the trade Walker knew of the existence of the debt sued on,

but he claims that Carter had told him that it had been settled, and that the son of the creditor, who, as agent of his father, had collected the last payment, had also informed him of the settlement of the note.

Just here it may be stated that the son and other witnesses positively contradict the defendant's contention upon the latter point.

Carter was sick but about three months before his death, and from the evidence we do not gather that his ailment required constant attention, nor was he excessively troublesome to those who nursed him and administered to his necessities. It does not appear that Walker in person, bestowed any nursing attention upon the patient, but, according to his testimony, he was in and out and about there for a considerable portion of time, although he gives as a reason for the bestowal of that much time that Mr. Carter, on account of the attachment which he had formed for the defendant, demanded it. However, a man and his wife who occupied one of the tenant houses which defendant had constructed did administer some to the wants of Carter, and after his death there was provided a board coffin in which to bury him, and a robe, which, with the coffin, according to Walker's testimony, cost some four or five dollars!

It is not shown how many visits the physician who waited upon Carter made, nor does the record disclose the charges per visit, although Walker acknowledges his liability for that bill, whatever it may be. It is shown that the tenant who nursed Carter in the manner stated performed some chores around the premises before the latter's last illness, but we do not gather that they were very extensive, as the old man, up to the time he became bedridden, was able to largely, if not entirely, attend to such matters himself, as he had been wont to do all his life.

We have thus gone into somewhat of a detailed statement of facts for the purpose of showing (1) that the transaction so closely resembles, if it is not in reality, such a fraudulent one on the part of Walker as would justify a cancellation of the deed in a suit brought by Carter or his legal representatives on the ground that he had been overreached and taken advantage of and been induced to convey to Walker his property for a wholly inadequate consideration, and that he was unduly influenced so to do; and (2) to show the extent of the

services performed by defendant in carrying out his undertaking.

We are convinced, however, that although Carter, if living, or his legal representatives after his death, might attack the deed herein involved because of fraud practiced upon him by the vendee Walker in procuring it, still a creditor of Carter may not upon the same grounds be entitled to that remedy.

The rule of law upon that subject is well stated in 20 Cyc., page 84, to be: "Where a person, by the practice of fraud, unjustly deprives another of his property, and the defrauded party does not attack the transaction, it seems by analogy of law that his creditors cannot maintain an action of deceit against the party guilty of the fraud on the ground that the latter has diminished their debtor's means of making payment, the remedy of the defrauding debtor being personal to him and not inuring to his creditor."

The rule would seem to be founded upon the idea that in such cases the defrauded debtor had violated no obligation which he owed to his creditor by intentionally placing his property beyond the reach of the latter and that the cause of action grows out of a wrong perpetrated upon the defrauded debtor and of course without his legal consent, and that the creditor cannot be subrogated to his right of action on account of the deceit and fraud practiced upon him.

The case, however, is entirely different where the fraud instead of being practiced on the grantor by the grantee is participated in by the former in an effort to deprive his creditors of an opportunity to collect their debts by putting his property beyond their reach. That the creditor of a debtor may have his remedy in such cases has long been the law in all the states of this Union, as well as in England. (13 Elizabeth). It is given in this state by sections 1906 and 1907 of the Kentucky Statutes, and the procedure is provided in section 1907a of the statutes.

Purely voluntary conveyances are *per se* fraudulent as to existing creditors, regardless of the intent of either of the parties or knowledge of the grantee of the existence of his grantor's indebtedness, and the law seems to be that conveyances upon the sole consideration of future support are, at least to the extent that they have not been executed, voluntary ones within this rule. In asserting

this principle, the editor of Cyc., Vol. 20, 493, says: "An agreement for future support is not a sufficient consideration to uphold a conveyance or transfer by a debtor, when to do so will operate to the prejudice of the existing creditor, as where all the debtor's property is conveyed or transferred. Where, however, support has been furnished in good faith, the conveyance will be sustained to that extent; and where an agreement for future support has been fully performed it becomes a valuable consideration, and in order to set the conveyance aside as fraudulent against creditors, it is necessary to show that such conveyance was made with fraudulent intent, and that the grantee at the time of the conveyance had notice of such intent."

Cases from the courts of many states will be found cited in the notes in support of the general rule set forth in the first part of the quotation.

The same rule is stated in Ruling Case Law, Vol. 12, pages 546-7, wherein it is said:

"Ordinarily a transfer of property in consideration of future support is invalid, at least as to existing creditors, whether it be the support of the debtor himself or members of his family, though in some cases it is held that there is merely a presumption of fraud in such cases, subject to be rebutted by evidence that the grantor retained sufficient property to pay all his debts. Such a conveyance will not be set aside at the instance of creditors, however, after support has been furnished in reliance on it, which, in value, exceeds that of the property conveyed, and in any case, if the parties have acted in good faith, it will be sustained to the extent of the support actually furnished. One view is that if part of the consideration only is the future support, it will be invalid as to that part only, but other cases say that the courts will not undertake to determine what part of the consideration was paid in money, or other property, and what was to be paid in future support, but will hold the entire transaction a nullity. A man cannot create a spendthrift trust in his own favor."

These texts seem to have been the rule adopted by this court, as will be seen from the cases of Brady v. Briscoe, 2 J. J. Mar 214; Hawkins v. Moffit, 10 B. M. 81; Dohony v. Dohony, 7 Bush 217; Easum v. Pirtle, 81 Ky. 561; Anderson v. Meredith, 82 Ky. 564; Gregory v. Lamb,

19 Ky. Law Rep. 943, and Brown v. Moore, 21 Ky. Law Rep. 664.

It would render this opinion too long to consider in detail the facts in each of those cases, but a reference to them will show that the general doctrine as stated in the excerpts which we have herein inserted was applied under the peculiar facts of those cases. It can make no difference, so far as this case is concerned, what the rule might be held to be if the contract was entirely executed, because this is not the fact here, as one of the persons whom the vendee agreed to support is still living. We also have the fact that the debtor conveyed, upon what we have already noticed to be a very inadequate consideration, all of the property which he owned, leaving nothing for the payment of debts. The only part of the consideration which can be said in any manner to have been paid is the value of the services and attentions bestowed upon Smith Carter and the contributions made to him by defendant. If the defendant is allowed credit to the extent of the value of whatever he has done towards the execution of the contract he will have obtained the benefit of the most favorable view which any court has taken in such cases, and if this is done there will be plenty to pay him such sum, as well as the debt of the plaintiff. While defendant claims that what he has done in carrying out his part of the contract is worth $2,500, and for which he asks a prior lien, we are convinced from the proof that $1,000.00 would be a most liberal allowance for that purpose. This would be at the rate of $500.00 per year for the time that Smith Carter lived after the execution of the deed, not taking into consideration personal property which he is shown to have owned, nor any part of the pension which he was drawing from the Government, and which his wife has drawn since his death. It is extremely doubtful if that much would be allowed if there were real representatives of the deceased here contesting it. Inasmuch, however, as the property will be sufficient to pay that sum, as well as the debt of plaintiff, we have concluded to fix his allowance at that amount.

If the conveyance is voluntary as to the unexecuted part of the consideration, as we have seen, no rule is better settled than that the vendee should not be entitled to a lien for improvements. To permit him to claim such a lien with priority over his grantor's creditors would enable the debtor to put beyond the reach of his credi-

tors property amply sufficient to pay their debts and allow it to be consumed by improvements made by his voluntary vendee. Moreover, the facts of this case by no means satisfy us that the defendant, Walker, is such a *bona fide* purchaser as will entitle him to a prior lien for improvements made by him.

While the fact that defendant knew of the existence of plaintiff's debt may not of itself be sufficient to make him a fraudulent vendee (Wood v. Elliott, 9 Ky. Law Rep 952), when there is added thereto the further fact that the debtor was conveying to him all the property which he possessed, leaving nothing for existing creditors, and that, too, for a consideration of doubtful adequacy and one deemed by the law as at least constructively fraudulent, we cannot escape the conclusion that he is not such a *bona fide* purchaser as would entitle him to a prior equity for improvements which he made upon the land over that of existing creditors of his vendor, Carter.

Upon the plea of payment or settlement of the debt, besides being confronted by the judgment of the chancellor on this issue, the evidence is overwhelming that it had neither been paid nor in any manner settled.

We therefore conclude that the judgment in so far as it gave the defendant a prior lien for the improvements is erroneous. He should be granted a prior lien to the extent of $1,000.00, the amount expended in carrying out his contract, followed by a lien in favor of the plaintiff to the extent of his debt, interest and cost, and the land, or so much of it as may be necessary, should be sold for this purpose, reserving to plaintiff, if possible, his improvements, and the judgment is affirmed on the appeal and reversed on the cross-appeal with directions to proceed in accordance with this opinion.