## Ohio Valley Bank and Trust Company, et al. v. Pettit's Trustee, et al.

(Decided January 27, 1925.)

### Appeal from McCracken Circuit Court.

1. Banks and Banking—Beneficiaries of Trust Funds Entitled to Prior Lien on Assets Equal to One-Half Capital Stock, Notwithstanding Trust Funds Not Kept Separate.—Where banking and trust company, in violation of Ky. Stats., section 612a, did not invest half its capital stock in securities for protection of fiduciary accounts, and failed to keep such assets separate from other assets, and kept no books showing trust business apart from banking business, the beneficiaries of fiduciary accounts nevertheless had a prior lien on the assets to the amount of one-half the capital stock without being required to trace or identify the fiduciary funds.

2. Banks and Banking—General Creditors have Burden of Identifying Funds.—Under Ky. Stats., section 612a, requiring banking and trust company to invest one-half its capital stock in securities for protection of fiduciary accounts, the burden is on the general creditors of an insolvent trust company which failed to keep its trust accounts as required by law to clearly establish the identity of their funds to avoid priority of beneficiaries' liens on assets for fiduciary funds.

BRADSHAW & McDONALD and A. Y. MARTIN for appellants.

EATON & BOYD for appellees.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE— Affirming.

The Ohio Valley Bank & Trust Company, of Paducah, Kentucky, was organized pursuant to and by

virtue of the provisions of section 612a, Kentucky Statutes, which reads:

"Any number of persons, not less than seven, may associate to establish a corporation for the purpose of conducting, and it may conduct, both a banking business and a trust company business. The capital stock of such corporation shall not be less than thirty thousand dollars in counties having a population of twenty-five thousand or less; nor less than fifty thousand dollars in counties having a population more than twenty-five thousand. The whole of said capital stock shall be subscribed and paid in money before said corporation shall commence business. One-half of such capital stock shall be securely invested for the trust business of the corporation and shall at all times be kept separate and distinct from its other assets, and shall be primarily liable for its fiduciary obligations. The remainder of the capital stock of the corporation may be used in its business of banking, and its books shall be so kept as to show separately at all times the conditions of its banking business and of its trust business. Any corporation now doing either a banking or trust business in any county or city in this Commonwealth, may, with the consent of a majority, in number and interest, of its stockholders, organize under this section, and the stock, if unimpaired, may be converted into stock in the new corporation."

While engaged in business the trust company qualified as the executor of the will of Edward J. Pettit. As such it received funds from its testator's estate to the amount of $6,270.62, and, after paying the claims against the estate and certain specific devises, had left in its hands $4,583.59, which, under the will of testator, was due Helen Lucile Pettit and Edward J. Pettit, Jr. The will provided that the amount due them should be held in trust for them, and appointed the Ohio Valley Bank & Trust Company trustee. However, it had never qualified as trustee but still held the fund as executor. On November 5, 1923, and while the fund above was held by it as indicated, the Ohio Valley Bank & Trust Company, having become insolvent, was closed by the state banking commissioner, who took over its assets for liquidation under the provisions of our statutes relating to banks and banking. Subsequently the City National Bank, of Paducah,

Kentucky, was appointed trustee for Helen Lucile Pettit and Edward J. Pettit, Jr., and demanded of the state banking commissioner the funds due its *cestuis que trustent.* The banking commissioner refused payment and this litigation ensued.

The Ohio Valley Bank & Trust Company was capitalized at $80,000.00. Although by the section of the statutes quoted above it is provided that one-half of the capital stock of a combined bank and trust company shall be securely invested for its trust business and shall at all times be kept separate and distinct from its other assets and shall be primarily liable for its fiduciary obligations, and that the accounts of such corporations shall be kept separately so as to show at all times the condition of its banking business and its trust business, it appears from the record herein that none of those provisions were regarded or followed by appellant. The record discloses that its business was indiscriminately engaged in; that no separate books were kept; that its funds from its fiduciary accounts and those from the accounts of its general depositors, as well as all its capital stock, had been so mixed and commingled as to make it impossible to determine the identity of any of its funds. The record does not disclose the total amount of its fiduciary accounts, or the amount owing by it to its general depositors, or the amount or estimated or approximate amount of its assets. It is contended for appellants, the insolvent bank and trust company and the state banking commissioner, that, because the provisions of section 612a, of the statutes, were not complied with by it and the funds arising from the sale of its capital stock and those arising from its fiduciary accounts and those arising from the deposits of its general creditors have been so mixed and commingled that none of them can be traced or identified, regardless of the provisions of section 612a, *supra,* the fiduciary accounts of the insolvent trust company have lost the lien and priority given by the statute; and that the fiduciary and the general creditors are on the same footing. On the other hand, it is contended for appellee, as trustee of Helen Lucile and Edward J. Pettit, Jr., that, since the officers of the insolvent trust company failed to keep half of its capital stock invested, as provided by the statute, *supra,* and failed to keep its books so as to be able to identify the funds held by it in a fiduciary capacity, the beneficiaries of such accounts have a prior lien on all of the assets of the insolvent trust company, and that all

such accounts must be settled in full before the general creditors may have anything. Upon the trial of the case the chancellor adjudged that under the facts disclosed the beneficiaries of the fiduciary accounts of the insolvent trust company have a prior lien on its assets to the amount of $40,000.00, half its capital stock, and adjudged that the amount due Helen Lucile and Edward J. Pettit, Jr., be paid in full to the appellee, City National Bank, of Paducah, as their trustee. This appeal is prosecuted from that judgment and the same respective contentions are made by the parties here as were made in the court below.

If we should hold with the contention of the insolvent trust company and the state banking commissioner, appellants herein, that by merely failing to follow the provisions of section 612a, Kentucky Statutes, in failing to invest half of its capital stock in securities for the protection of its fiduciary accounts and in failing to keep such assets separate and distinct from its other assets and in failing to keep its books so as to keep the trust business separate from the banking business, all the fiduciary accounts of such an institution lose the prior lien provided for them by the section, *supra,* would in effect be to hold that any combined bank and trust company may by the acts of its officers and agents repeal and nullify the statute above. Clearly that can not be done. That contention is made by appellants under the general rule from Storey, section 1259, quoted in New Farmers' Bank's Trustee v. Cockrell, Receiver, 106 Ky. 578:

> "The right to follow a trust fund ceases when the means of ascertainment fail, which, of course, is the case where the subject matter is turned into money, and mixed and confounded in a general mass of property of the same description."

This further general principle quoted from 7 C. J., page 895, is relied on by appellants:

> "Where money received by a trust company as trustee is not kept distinct or invested in any specific way, but is mingled with the general mass of money on deposit and used in the general banking business, and there is no means of tracing or ascertaining its identity in any form or species of property, the *cestui que trust* is not entitled to a preference over general

creditors in a distribution of the funds in the hands of the assignees of such trust company.''

It must be borne in mind, however, that those general rules are applicable to cases where no statutory provision has a bearing on the question. Unquestionably by the provision of 612a, *supra,* the legislature intended that to the extent of half of the capital stock of any joint bank and trust company the beneficiaries of fiduciary accounts should have a prior lien to secure the payment of their accounts in full. We are confronted in this case with the fact that the officers and agents of the insolvent bank and trust company wilfully failed to follow the provisions of the statutes. Its assets have not been so invested and it can not now be ascertained what assets represent its capital stock or what represent the half of the capital stock intended to be the security for fiduciary accounts. All those who merely as general depositors placed their funds in the banking department of this institution did so with the full knowledge that under the statute above fifty per cent. of its capital stock was pledged to the beneficiaries of its fiducial accounts as a guarantee of their payment in full. The record discloses that there are assets enough on hand to settle the fiduciary accounts in full, and that when the record was submitted for trial liquidation had not proceeded far enough to ascertain what per cent. could then be paid to general creditors. Under the facts presented by this record, it seems to us that the statute has the effect of changing the rule with reference to the burden of establishing the identity of the funds. It would seem clear that, following the insolvency of a joint bank and trust company, if a general depositor could identify funds deposited by him as constituting the assets of the insolvent corporation it would be inequitable to take his funds to settle the losses occasioned by the poor investment of that portion of the capital stock set aside for the protection of the fiduciary accounts or to pay the losses occasioned by the investment of the fiduciary funds themselves. But all such depositors become creditors of such an institution with notice that its assets to the extent of half its capital stock are pledged to the full payment of its fiduciary accounts. Under the statute clearly the burden shifts to general creditors to establish the identity of their funds. In this case the burden has not been sustained for them. In view of the express priority given by the statute, *supra,* to the

beneficiaries of the fiduciary accounts, upon assets of the institution to the extent of half of its capital stock, to establish, merely, that the half of the capital stock and the proceeds of the fiduciary accounts can not now be traced and identified is not sufficient to deprive such accounts of the priority given. To place themselves on an equal footing with such creditors general creditors must now trace and identify their funds.

The chancellor adjudged that to the extent of $40,-000.00 of the assets of the insolvent corporation, that being half of the amount of its capital stock, the beneficiaries of its fiduciary accounts must be preferred. We conclude that under the facts of this case his judgment is proper.

The judgment herein is affirmed. The whole court sitting.