# Kincheloe v. Bank of Hardinsburg & Trust Co. et al.

(Decided Nov. 15, 1932.)

P. M. BASHAM for appellant.

ALLEN R. KINCHELOE for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE DIETZMAN —Affirming.

In January, 1931, the Bank of Hardinsburg & Trust Company became insolvent and was placed in the hands of the state banking commissioner for liquidation. It was a combined bank and trust company as is author-

2

ized by section 612a of the Statutes. As that section requires, the bank kept its banking and its trust businesses separate, at least so far as the books were concerned. Whether or not it kept, as that section also requires, one-half of its capital stock securely invested for its trust business and kept such half so invested separate and distinct from its other assets, the record is silent. Prior to the 22d day of January, 1930, the appellant was the owner and in possession of a number of bonds. He had experienced difficulty in keeping track of the maturing dates of the coupons and of the principal of the bonds, and ofttimes would miss notices of the calls for payment of the bonds which he held and would not be aware of such calls until perhaps some six months afterwards, when he would present the next coupon for payment and thus he would lose that interest for such period. Appellant was then a general depositor with the banking department of this institution and of course knew of its trust department. After consulting with the latter department and being assured by it that the plan which he proposed would secure him absolute safety of his principal and interest, he, on January 22, 1930, entered into an arrangement with such trust department under the terms of which he deposited with that trust department all of his bonds. He retained title to the bonds and had the right to call for any or all of them at any time he pleased. The institution was to collect the coupons as they fell due and the principal of any bonds which had matured or were called and was to place the amount of the proceeds of such coupons and principal to appellant's credit in the trust department of the institution. It had no authority to sell any of appellant's bonds or to make any purchases out of the moneys to his credit in the trust department; but it would and did at appellant's direction, and according to his instructions, buy or sell as the case might be. The appellant had no power to check on this account of the proceeds of the coupons and principal standing to his credit in the trust department, although he did have the right to go to the trust department and secure such proceeds by executing a receipt therefor. The trust department kept no cash, or at least no appreciable amount, on hand so far as this record shows. All of the funds which it collected in the course of the business which it conducted as a trust department was deposited by it with the banking department in an account in the name of the trust department. The trust

department's books, however, showed the individual credits which the trust department owed to those who were doing business with the trust department. In the event it became necessary for the trust department to pay any money to any one whom it owed, it would draw a check on the banking department against its account above mentioned. When the bank and trust company was placed in the hands of the state banking commissioner for liquidation, there was standing on the books of the trust department a credit of $6,533 in favor of the appellant as the net result of the operations of the parties under the contract of January 22, 1930. The bonds which appellant had deposited and which had not been called or sold under appellant's directions were intact and were returned to the appellant by the liquidating agent of the state banking commissioner. Ascertaining that since January 22, 1930, and continuously up to and including the day the institution was placed in the hands of the banking commissioner, there had been and was in the vaults of the banking department cash to the amount of at least $7,000, the appellant made demand on the banking commissioner that appellant's claim of $6,533 be allowed as a preferred claim against the assets of the institution. This demand was refused, though the commissioner was willing to allow the claim as a general one. Thereupon the petition in this action was filed by which the appellant, then plaintiff, sought to have the circuit court declare his claim a preferred one. After a hearing which brought out the facts as above set out, the court entered a judgment ordering appellant's claim to be allowed as a general claim, but declined to give it any priority over the claims of the other general creditors, and especially the general depositors of the banking department. From that judgment this appeal is prosecuted for the purpose of having the claim declared a preferred one.

From our statement of the case, it will be remembered that appellant made no claim that the requirements of section 612a of the Statutes about the investment of one-half of the capital stock of the trust company being kept separate and apart as a security for its fiduciary obligations had not been complied with. Hence our opinion in the case of Ohio Valley Bank & Trust Co. v. Pettit's Trustee, 206 Ky. 818, 268 S. W. 535, is not controlling of the instant controversy. Appellant pitches his argument that his claim should be allowed

as a preferred one on these propositions: That the contract of January 22, 1930, constituted the bank and trust company the trustee of appellant as to the matters covered by that contract, that in collecting the coupons and principal of the bonds deposited under that contract, the bank and trust company received such proceeds as the trustee of the appellant, that such trust funds admittedly found their way directly into the estate of the bank and trust company, and that they were found to reside in the assets of the bank and trust company at the time it was placed in the hands of the state banking commissioner and were not expended or dissipated for any purpose in the business of the trustee; these facts being established according to the rule laid down in the case of Farmers' Bank of White Plains et al. v. Bailey, 221 Ky. 55, 297 S. W. 938, as it was shown that between the dates of the contract and of the insolvency, the bank and trust company always had on hand in cash an amount in excess of appellant's claim. On the other hand, the banking commissioner contends that the contract in question did not constitute the bank and trust company a trustee for the appellant, but only a bailee; that the contract invested the bank and trust company with the right to collect the coupons and principal of bonds called or sold under the direction of the appellant and to hold the proceeds by placing in favor of the appellant on the books of the trust department a general credit. It did not have to keep in specie the actual proceeds collected, but had to account only for the amount collected, which being true, the relationship existing between the appellant and the bank and trust company was only that of debtor and creditor, from which it follows that on the insolvency of the institution, the appellant was only a general creditor. Let us consider these contentions.

That the contract of January 22, 1930, did not constitute the bank and trust company trustee of the bonds deposited under it is clear. Title never passed from the appellant to the bank and trust company; it had no power to sell the bonds or to buy any new ones with any credits appellant had save and except at his special direction and according thereto. He could demand at any time all or any of his bonds. They were kept intact and in specie except as sold under his direction or called for payment by the obligors. In short, the bank and trust company was simply a bailee of these bonds.

Ashley's Admr's v. Denton, 1. Litt. 86. Cf. Lossie v. Central Trust Co. of Owensboro, 219 Ky. 1, 292 S. W. 338. Was the bank and trust company trustee under the contract in question of the proceeds of the coupons and principal of the bonds called or sold? We think not. The clear intention of the contract was to constitute the bank and trust company simply the agent of the appellant to collect the proceeds of the coupons and bonds called or sold and to hold such proceeds as the debtor of the appellant subject to his call and direction. The contract did not contemplate that the bank and trust company was to hold the identical proceeds received until called for by the appellant. On the contrary, it contemplated that on receipt of such proceeds the appellant was to be given a credit on the books of the trust department for such amount—a credit which appellant could reduce to cash by going to the bank and trust company and demanding it, or which he could use in whole or in part in the purchase of new bonds or which he could, as indeed he did once, transfer in part or in whole to his open account in the banking department. But the specific proceeds of the coupons and bonds called or sold could be mingled by the trust department with its other funds. It was under a duty simply to put to the credit of the appellant on its books the amount of such proceeds. This being true, there was no trust relationship existing between the bank and trust company and the appellant as to such credit. The relationship was purely that of debtor and creditor. Keene v. Collier, 1 Metc. 415; Shoemaker v. Hinze, 53 Wis. 116, 10 N. W. 86; Ames, Cases on Trusts (2d Ed.) p. 25 et seq. It follows that as the relationship between appellant and the bank and trust company as to these proceeds of coupons and bonds was only that of debtor and creditor, the appellant was not entitled to have his claim allowed as a preferred one.

The judgment of the chancellor being in accord with these views, it is affirmed.

Whole court sitting.