## IN RE LIQUIDATION OF OGDEN STATE BANK.
## IN RE GARNSEY'S ESTATE.

No. 5517. Decided August 3, 1934. (35 P. [2d] 823.)

*Arthur Woolley* and *Wm. H. Reeder, Jr.*, both of Ogden, for appellants.

*Stuart P. Dobbs*, of Ogden for respondent.

STRAUP, Chief Justice.

The controlling facts in this case are similar to those in the case of *Parkinson* v. *State Bank of Millard County et al.* (Utah) 35 P. 814, just decided. The bank likewise was an executor appointed by the court in pursuance of what is now R. S. Utah 1933, § 7-3-35, referred to and considered in the Parkinson Case. The bank and Jennie Garnsey Hunt, by the district court of Weber county, were appointed co-executors of the estate of Herman E. Garnsey, deceased. The bank, however, chiefly alone acted in all matters pertaining to the estate and handled the administration of it. As such executor the bank, when its doors were closed and taken over by the bank commissioner for liquidation, was accountable to the estate in the sum of over $13,400, moneys collected by it and not paid over to the estate or to those interested therein nor otherwise accounted for.

A permit in December, 1921, was issued to the bank to act as executor and administrator of estates. At that time, as the court found, "its paid in capital was $100,000 and its surplus $200,000." In September, 1930, the bank and Mrs. Hunt were appointed executors of the estate. The moneys of the estate as collected and received by the bank were entered in an account carried on the books of the bank under the name of "Ogden State Bank, Executor of the Estate of Herman E. Garnsey, Deceased." In August, 1931, the bank

became insolvent and when taken over by the bank commissioner it, as found by the court, "had sustained losses in excess of the total amount of such capital and surplus"; that the cash in the vaults of the bank at that time was in the sum of over $96,000, cash due from solvent banks of over $114,700 and $42,000 due it from bank clearances and cash items in process of collection; and that at such time "the amount held by such bank under appointments from courts of competent jurisdiction accepted by it as assignee, agent, receiver, guardian, executor or administrator and held by it under any trust which it had been directed to execute by any court of competent jurisdiction, totaled $51,-258"; and that "claims had been made against such bank and the liquidators for preference and priority of payment over common creditors in excess of $300,000, but that the assets of such bank are far in excess of all claims to preference thereupon of any kind and character."

The court thus ruled that in virtue of the provisions of the statute, now section 7-3-35, supra, "the capital of such bank to the extent of $100,000 was security for the faithful performance of the duties" of the bank under its appointment by order of the court as executor of the estate and for an accounting by it in lieu of a bond, "and that such capital cannot be charged with losses incurred in the operation of such bank, to the detriment of any person or persons entitled to look to the same as security for the faithful performance of any such duty and for the purpose of determination of the amounts due from the assets of such bank, such capital must be treated as intact to the extent of the amount necessary to pay any claims arising out of any such trusts created by order of a court as are within the purview of such section and that the amounts so held by such bank should be paid from the assets of such bank up to the amount of $100,000 and that, the total amount due and payable upon all of such trusts from such Ogden State Bank on August 29th, 1931 (when the bank was taken over by the bank commissioner), being less than $100,000," the coexecutor, Mrs.

Hunt, of such estate was "entitled to receive payment in full from the liquidators of said bank of said sum of $13,422.96, represented by moneys on hand August 29, 1931."

The court thereupon discharged the bank from further duties as executor in the administration of the estate, revoked its letters of administration, and ordered the bank commissioner and the special liquidating agent to pay "from any moneys in their possession as liquidators of the Ogden State Bank as part of the assets of such bank" to Mrs. Hunt, the sole remaining executor, the sum of $13,422.96. From that order and judgment the commissioner and liquidating agent have prosecuted this appeal.

By the commissioner it is contended, and as was contended by him in the Parkinson Case, that the phrase, "capital of such bank shall be held as security," etc., as used in section 7-3-35, supra, meant moneys or property paid in or contributed to the bank by the incorporators in payment of shares of stock issued to them, and in support thereof the commissioner here, as in the Parkinson Case, relied on the case of *Child* v. *Ogden State Bank,* 81 Utah 464, 20 P. (2d) 599, 88 A. L. R. 1284, considered by this court in the Parkinson Case just decided. As is seen, the court below in the case in hand did not go to the extent as held by us in the Parkinson Case decided since the appeal was taken in this case. Here the court below proceeded on the theory that regarding the term "capital" as appearing in the section in question as constituting the moneys paid in or contributed to the bank by the incorporators in payment of shares of stock issued to them, here the sum of $100,000, and upon which the lien created by the statute attached, nevertheless that such capital, such moneys, may not be charged with losses incurred in the operation of the bank to the detriment of those entitled to look to the same as security for the faithful performance of the bank as an executor or administrator of an estate appointed by the court; and inasmuch as the total amount of all claims impressed with liens under the section of the statute in question, including the claimed

lien in this action, arising under appointments of the bank as executor, administrator, or of other trusts directed to be executed by order of court, was less than $52,000; and inasmuch as the bank, when its doors were closed and its assets and affairs taken over by the bank commissioner for liquidation, had on hand moneys in excess of $100,000 and more than was necessary to pay all lien claimants who had liens secured by the statute in question, the court required the claim here, amounting to $13,422 secured by lien, to be paid in full by the commissioner from assets "as represented by moneys on hand on August 29, 1931," the time the bank and its assets were taken over by the commissioner for liquidation. In other words, the court so regarding the so called paid-in capital as security, etc., and upon which the lien created by the statute attached, and on the presumption that the bank, in paying out moneys in the conduct and in the course of its business, paid out its own moneys and not those of others in its possession and to which it had no title or those on which a lien by the statute was impressed as and for security, the cash on hand when the bank was closed, to the extent of $100,000, was treated by the court as representing its paid-in capital; and if in the course of liquidation the commissioner used and paid out such moneys, not in the payment of liens created by the statute in question, the court, to the extent of $100,000 impressed a lien on the general assets of the bank coming in the hands of the commissioner. If it be assumed, as the court below evidently did because of the observations of this court in the Child Case, that "capital of such bank shall be held as security" meant moneys or property paid in or contributed for shares of stock, there is good authority, *Ohio Bank & Trust Co.* v. *Pettit's Trustee,* 206 Ky. 818, 268 S. W. 535, and *Quinn* v. *Earle* (C. C.) 95 F. 728, 731; *City Bank of Hopkinsville* v. *Blackmore* (C. C. A.) 75 F. 771, 773, *Frelinghuysen* v. *Nugent* (C. C.) 36 F. 229, 239, approvingly referred to in *First National Bank* v. *Williams* (D. C.) 15 F. (2d) 585, not in support of such characterized meaning of capital—

the cited cases not dealing with such a question— but in support of the theory adopted by the court impressing the lien created by the statute on the moneys on hand (not otherwise impressed with a lien) of the bank when its affairs were taken over by the commissioner, to the extent of $100,-000 or so much thereof as was necessary to meet the amounts due lien claimants coming within the provisions of the statute in question.

However, in view of the decision in the Parkinson Case, just decided, the case in hand is controlled and ruled by that case and requires an affirmance of the judgment for the reasons and on the theory stated in that case, though the court below did not here base the judgment on the ground or theory as stated in the Parkinson Case.

The judgment of the court below is thus affirmed, with costs to the respondent.

ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., concur.

MOFFAT, Justice.

I concur in the result affirming the judgment.