# Sauer's Trustee et al. v. Dorman, Commissioner of Banking and Securities, et al.

(Decided Nov. 30, 1934.)

P. M. BASHAM and ALLEN R. KINCHELOE for appellants.

J. R. ESKRIDGE for appellee Banking Commissioner.

MOORMAN & BEARD, J. DONALD DINNING and CRAWFORD, MIDDLETON, MILNER & SEELBACH for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

On January 30, 1931, the Bank of Hardinsburg & Trust Company, then doing a combined banking and trust business under authority of section 612a, Kentucky Statutes, by its directors was concluded to be insolvent, and its affairs were turned over to the appellee Dorman, banking commissioner, for liquidation. At that time it was committee, guardian, or trustee for numerous persons and estates. After the closing of the bank, the two appellants, I. B. Richardson and H. L. Dooley, were appointed and qualified in several instances, as fiduciaries in the stead of the failed bank and trust company, and they have appealed from an order of the Breckinridge circuit court approving a loan proposed to be negotiated by appellee with the Reconstruction Finance Corporation, and authorizing the distribution of the proceeds of the loan, if made, among creditors of the failed institution.

Under the provisions of the section of the Statutes, supra, an institution conducting the combined banking and trust business is required to securely invest one-half of its capital stock for the trust business of the corporation, to keep the one-half of its capital stock separate and distinct from its other assets, and to keep its books so as to show separately at all times the conditions of its trust and banking business, and it is provided further that the investments shall be primarily liable for its fiduciary obligations.

The capital stock of the corporation here involved was $100,000, and it is admitted that there had been no compliance with the requirements directly above enumerated, other than perhaps the investment of some of the trust funds.

At the date of the closing of the bank it owed the First National Bank of Louisville approximately $88,000, plus accrued interest, amount not stated. It had in its hands as fiduciary a considerable sum belonging to various estates and wards, which for the present may be said to total approximately $70,000. There were pledged as collateral on the debt due the First National Bank of Louisville assets of the face value of approximately $350,000.

Some time prior to March 15, 1934, the appellee applied to the R. F. C. for a loan, with a view of applying the proceeds, if and when obtained, to a payment of a portion of the debts of the insolvent institution,

and on June 2, 1934, appellee reported to the court that the loan was in negotiation to the amount of $127,340; it having been arranged upon the requirement that the appellee should pledge to the R. F. C. all assets in the hands of the liquidating agent, including real estate, title to which was vested in the bank and trust company. In the report, which was also a petition for advice and approval, it was proposed to distribute the proceeds of the loan in the following manner: (1) To pay preferred claims representing uninvested trust funds $10,854.71; (2) to pay the First National Bank for its debt of $88,000 (plus interest) $75,000; and (3) to pay depositors of the failed bank a dividend of 10 per cent., amounting to $41,705.29.

It is recited in the record that counsel for alleged preferred claimants objected and excepted to the filing of the petition and report, and the court set the matter for a further hearing a week hence, when the matter was continued until June 27, for the purpose of allowing the filing of exceptions by objectors and for consideration of disputed points, at which time the appellee filed an amended and substituted special report and petition for advice. In this report and petition he reiterated in part what was set out in his former report and petition, but in amplified form, particularly with reference to that part of his former report and petition which alleged that the loan had been formulated on certain conditions exacted by the R. F. C. It was stated that there was considerable doubt as to the legality of the claims of complaining fiduciaries, because of the failure to properly present their claims so as to have same adjudicated to be in preference to the claims of other creditors. It was also made to appear that the chief creditor, the First National Bank of Louisville, holding an obligation of the insolvent bank in the approximate amount of $88,000, and accrued interest, and which also held as collateral to secure the payment thereof assets of the failed bank, approximately of the value of $350,000, had agreed to accept in full payment of its debt the sum of $60,634.71, and release to the liquidating agent all the collateral in its hands, the effect of which proposal appears to be a rebate of $14,365.29, from the $75,000, proposed by appellee to pay in under the original report, or a total reduction of $27,365.29, from the principal sum of $88,000.

The liquidating agent then proposed to the court

in order to meet the objections of claimants that the bank had failed to comply with the provisions of section 612a, Kentucky Statutes, hereinabove referred to, it should approve the creation of a trust fund to be held for the use and benefit of the various trust estates to be made up as follows: To set aside for the trust, cash from the proceeds of the proposed loan $25,000, all unpledged assets of the failed bank, and all assets pledged to the R. F. C., which should not be required by it in the liquidation of its loan, when and if released by the R. F. C. to the liquidating agent, all of which unpledged assets were alleged to be of the face value in excess of $300,000, and including in pledge all equities in real estate owned by the bank and under mortgage to the R. F. C., "the actual value" of all of which is in excess of $25,000, thus, as is claimed, making the total trust fund $50,000 an amount equal to one-half the capital stock of the bank and trust company.

The appellee then asked the court to approve the distribution of the $127,340, as follows: To set aside $25,000 in cash to the trust fund, pay to the First National Bank $60,634.71, upon release of the collateral, and to distribute to the depositors $41,705.29, which appears to be 10 per cent. dividend on the total deposits, and it was further asked that the court order the cost and expenses of liquidation to be paid out of the proceeds of the liquidation of the collateral securities, and if anything remained after the payments above set out, including payments in full to preferred creditors, there should follow a distribution to general creditors.

The two fiduciaries, appellants, at the same time filed motion to strike, demurrer, and exceptions, seven in number, to the petition and report of appellee.

The motion to strike and demurrer were overruled, and as it appears that such objections as were raised on demurrer were presented by the exceptions, the demurrer was properly overruled, as was the motion to strike, since, as now observed by the court, the petition and report as amended did not contain any statements or allegations which were not apparently necessary for the information and guidance of the court in determining the question presented.

As to the exceptions, the first six in number might have been embodied in one. Taken all together, they complain that assets to the extent of $50,000 were not

set aside before distribution was made of the proceeds of the proposed loan. On final analysis it seems, a conclusion justified by a reading of appellants' brief, that the real complaint is that the court should have set aside for the use and benefit of the trust fund $50,000 in cash or to have set aside in trust all assets before approving any distribution.

The seventh exception sets up the fact that there were at the time of its filing pending in the Breckinridge circuit court actions by the two excepting fiduciaries and others against the Bank of Hardinsburg & Trust Company, seeking to have the court allocate of the assets of the bank $50,000 for the benefit of the trust estates of said institution. In brief it is said these actions are based on the fact that the bank wrongfully, illegally, and fraudulently pretended to invest the trust funds in its hands belonging to the various trust estates in certain worthless securities held and owned by the bank, and which were indorsed to the bank in its fiduciary capacity without recourse. It is clearly to be observed that this exception was not sufficient to require the court to uphold it in the instant case. If there are other actions pending, they are, as described, actions against the bank, or perhaps against its officers and directors, and not against the liquidating agent. Not having been made a part of this record, the court cannot undertake to determine the exact character or possible effect of the alleged actions.

Upon submission of the matter at hand to the court below on the amended report, petition, and exceptions, the court ordered and directed the trust fund to be set up in the manner outlined, and directed the proceeds of the R. F. C. loan to be distributed as recommended, over the objection of appellants.

As said above, it seems that the objection of appellants is that the court erred in not setting aside from the R. F. C. loan the sum of $50,000 in cash for the use and benefit of the trust estates, or in failing to give a trust lien against all the failed bank's assets, and in pressing their contention appellants rely solely on the statute, section 612a, and what is claimed to be a construction of that statute in the case of Ohio Valley Bank & Trust Co. v. Pettit's Trustee, 206 Ky. 818, 268 S. W. 535.

We do not take the same view of the decision supra

as do appellants' counsel. The opinion is very clear and forceful, and it is distinctly held therein that section 612a, Kentucky Statutes is mandatory in its requirements that one-half the capital stock of a combined bank and trust institution be securely invested for the benefit of the trust business, and that same shall be primarily liable for its fiduciary obligations. The court further held that when the combined institution failed in the requirements of the statute supra, the beneficiaries of its fiduciary accounts should be preferred, and, as we gather from that decision the court held that the failure to securely invest and set aside one-half the capital for the use of truste estates should not defeat the intent of the statute in making one-half the capital stock primarily liable for trust funds. The court in that case did not add anything to, or in any way enlarge the statute, and in upholding the judgment of the lower court, adjudged only that, of the assets of the insolvent corporation, $40,000 should be in lien for trust purposes; the named amount being one-half that corporation's capital stock.

It cannot be concluded that the court in its decision gave or intended to give to the beneficiaries of trust funds a lien, or a preference to the extent of all the assets of the bank, nor that cash to that amount should be set aside. The lien or preference contended for is given by the statute supra, and by no sort of reasoning can it be conceived that the statute gives, or intended to give, any preference or lien to a greater extent than is plainly set out in the statute.

Such being the undoubted construction of the statute in the Pettit case, it only remains to be seen whether or not the lower court has followed the law in creating the trust fund, as it was created, or has erred in ordering distribution in the manner as was done. The only foundation upon which this court could base a conclusion contrary to the directions of the court would be that the court had acted arbitrarily, or had abused a sound discretion, which discretion in cases of this nature is particularly vested in the chancellor. Milner v. Gibson, 249 Ky. 594, 61 S. W. (2d) 273. In this instance it cannot be said that the court did less than what was right, just, and equitable under all the circumstances.

It appears from the record, including the report of the hearing of proof, that the court had before it or

available, in addition to appellee's report, a report of the assets and liabilities of the failed bank and trust company, which no doubt aided it in arriving at a fair conclusion of the matter at hand. The court also had before it such pleaded and undenied allegations as might lead the court to doubt the legality of some of the trust claims as being preferred, and that the total of the trust claims might be reduced by the finding that some of them were not in law and in fact any more than agency accounts. Kincheloe v. Bank of Hardinsburg & Trust Co., 246 Ky. 1, 54 S.W.(2d) 384, 84 A. L. R. 1530.

Counsel for appellants insist that the matter at hand is not one in the discretion of the court. Of course the court must follow the statute and see that one-half of the capital stock is set aside and primarily held for trust purposes, but as to what shall be set aside is necessarily a matter in the discretion of the court.

However that may be, it can be and is determined from the record here that the court below had before it sufficient facts to justify its actions in approving the loan, the trust as set up, and the distribution of the proceeds of the loan, all in the manner as was done, and further there is not sufficient showing by appellants that the order of the court should now be disturbed because of any arbitrary action or lack of exercise of discretion.

Judgment affirmed.